UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH PASQUARELLO,<br><br>      Plaintiff,<br><br>      v.<br><br>CROTHAL HEALTHCARE, INC., MICHAEL ROCHE<br><br>      Defendant. | No. 21-08732-JMF<br><br>**DEFENDANT'S STATEMENT OF MATERIAL FACTS** |

    Pursuant to Fed. R. Civ. P. Rule 56.1, Defendants Crothall Healthcare, Inc., and Michael Roche ("Defendants") by their attorneys Littler Mendelson, P.C., submit this Statement of Undisputed Material Facts in support of Defendants' Motion for Summary Judgment (the "Motion").

**History of Fire Safety Department**

    1.  Crothall is a leading healthcare support services provider.  (Roche Decl. ¶ 2.)

    2.  Crothall provides support to hospitals and health systems across the country in seven core areas. (Roche Decl. ¶¶ 2-3)

    3.  These core areas include environmental services, healthcare technology solutions, patient transportation, facilities management, ambulatory services, sterile processing and laundry services. (Roche Decl. ¶ 3.)

    4.  Mount Sinai Health System is a healthcare network in New York City and a Crothall client.  (Roche Decl. ¶ 4.)

5. Mount Sinai Health System's main campus (the "Hospital") is located in Manhattan, New York. (Roche Decl. ¶ 5)

6. Crothall began providing management services for Mt. Sinai – including its fire safety management services in 2013. (Shaffer Decl. ¶ 2 .)

7. Throughout most of 2013, Robert Shaffer, who is 71 years old – managed and performed the duties of the entire fire safety group individually. (Shaffer Decl. ¶¶ 2-3.)

8. In July 2013, William VanWart was hired to work as a Fire Safety Supervisor under Shaffer's supervision. (Shaffer Decl. ¶ 4 )

9. VanWart was over 40 years old at his time of hire. (Shaffer Decl. ¶ 4.)

10. In 2015, Crothall restructured its management groups and Shaffer was transitioned to the position of Systems Director where he oversaw all of the Hospital's campuses. (Shaffer Decl. ¶ 5.)

11. Following Shaffer's transition, VanWart was named Director of Fire Safety. (Shaffer Decl. ¶ 5.)

12. To support VanWart, the department made two other hires in 2015 – Mark Matthews and Matthew Bond. (Shaffer Decl. ¶ 6.)

13. Mark Matthews was hired as a Fire Safety Manager upon his hire in 2015. (Shaffer Decl. ¶ 7.)

14. The duties of a Fire Safety Manager include:

- Understanding and implementing Mt. Sinai fire & life safety policies,
- Implementing and managing building fire safety plans,
- Performing ILSM assessments and document preparation,
- Managing and implementing the hot works program,

- Managing and reviewing above ceiling permits,

- Managing fire stopping program,

- Managing and implementing the clear corridor program,

- Participating in event walk-throughs to ensure life safety compliance,

- Managing and reviewing lab inspections and required follow-up for corrective work,

- Maintaining all documentation of programs of responsibility,

- Performing necessary audits to ensure full compliance with the Joint Commission Standards and all governing agencies,

- Performing all manager responsibilities as requested by the Fire Safety Assistant Director,

- Participating in hospital management and safety meetings,

- Assisting in the mitigation of violations and fines,

- Managing fire marshal staff to include, but not limited to (if applicable):

    o Shift staffing level and weekly payroll submissions,

    o Managing and implementing fire drill program

    o Managing and implementing in-service training program

    o Managing and implementing preventive maintenance programs, Managing and reviewing all fire marshal daily reports and occurrence reports.

(Shaffer Decl. ¶ 7.)

4885-8100-1523.1 / 024778-1655

15. Matthew Bond was hired as Fire Safety Supervisor. Shaffer had familiarity with Bond who began his employment with Crothall in June 2014 as hourly fire safety intern. (Shaffer Decl. ¶ 8.)

16. The duties of a Fire Safety Supervisor include:

- Understanding and implementing Mt. Sinai fire & life safety policies,
- Implementing and managing building fire safety plans,
- Performing ILSM assessments and document preparation,
- Managing and implementing the hot works program,
- Managing and reviewing above ceiling permits,
- Managing fire stopping program,
- Managing and implementing the clear corridor program,
- Participating in event walk-throughs to ensure life safety compliance,
- Managing and reviewing lab inspections and required follow-up for corrective work,
- Managing fire marshal staff to include, but not limited to (if applicable):
  - Shift staffing level and weekly payroll submissions,
  - Managing and implementing fire drill program
  - Managing and implementing in-service training program
  - Managing and implementing preventive maintenance programs, Managing and reviewing all fire marshal daily reports and occurrence reports.

(Shaffer Decl. ¶ 9.)

17. Matthews resigned in 2017, and Rafael Perez was hired as Fire Safety Compliance Manager. (Shaffer Decl. ¶ 10.)

18. Bond was promoted to the position of Assistant Fire Safety Director in 2017 following Matthews' resignation.  (Shaffer Decl. ¶ 11; Roche Decl. ¶ 15.)

19. Bond's salary $112,000 as Assistant Director of Fire Safety.  (Roche Decl. ¶ 74.)

20. The job description for the Assistant Fire Safety Director states the individual in this role must:

- Oversee programs for fire alarm & fire suppression testing and life safety preventative measures.
- Oversee maintenance of fire alarm and fire suppression systems.
- Carry out and supervise the implementation of interim live-saving measures (ILSM) in response to system deficiencies and construction.
- Perform audits and ensure full life safety and fire safety compliance with joint commission standards and all AHJ's.
- Oversee and participate in programs for reviewing construction projects to ensure compliance.
- Oversee fire drill and in-service training programs.
- Implement and manage building Fire Safety Plans.
- Manage programs for FDNY lab inspections and all laboratory life safety and fire safety compliance programs.
- Maintain public assembly compliance and permitting.

- Oversee programs for fire stopping and corrective work for life safety deficiencies.

(Shaffer Decl. ¶ 12; Roche Decl. ¶ 20, Ex. A.)

21. The Assistant Fire Safety Director must also obtain the following certifications:

- OSHA 10 hour,
- F-85 Fire Safety Director w/ active shooter & medical emergency preparedness,
- S-12 Sprinkler System Certificate of Fitness
- S-13 Standpipe System Certificate of Fitness
- S-95 FA System Certificate of Fitness
- F-07 Fire & Emergency Drill Certificate of Fitness
- NFPA 101 training .

(Roche Decl. ¶ 20; Ex. A.)

22. On September 29, 2019 Bond was demoted from the position of Assistant Fire Safety Director to Fire Safety Supervisor. His salary was reduced to $104,000. (Roche Decl. ¶ 74.)

23. In 2019, Joseph Jurain was hired as Fire Safety Supervisor. (Roche Decl. ¶ 18.)

24. Joseph Jurain was transferred to Mt. Sinai Queens Hospital in mid-2020. (Roche Decl. ¶ 28)

25. The Fire Safety Department hired Joseph Pasquarello to the position of Assistant Fire Safety Director October 21, 2019 and he began on November 2, 2019. (Roche Decl. ¶ 23.)

26. Pasquarello's salary was $112,500 dollars when he was hired to be Assistant Fire Safety Director. (Roche Decl. ¶ 75.)

27. Ron Kanterman was hired as a Fire Safety Supervisor on November 30, 2020. Kanterman was over 40 years old at his time of hire. (Roche Decl. ¶ 29.)

28. Mathew Bond accepted a transfer to the Engineering Department in January 2021. (Roche Decl. ¶ 28.)

29. Ms. Omelfi Garcia was hired as Fire Safety Manager in early 2021. (Roche Decl. ¶ 29.)

30. Bernie Nunez was hired as Director of Fire Safety on July 18, 2021. (Roche Decl. ¶ 66.)

31. Pasquarello resigned from the Fire Safety Department on September 21, 2021. (Roche Decl. ¶ 63.)

32. Nunez hired Bond as Assistant Director of Fire Safety on November 17, 2021. (Roche Decl. ¶ 71.)

**Training in the Fire Safety Department**

33. Crothall Fire Safety Department managers, supervisors and directors undergo a training program called "Foundations" after they are hired. The Foundations program teaches managers and senior leadership on how the Fire Safety Department is supposed to be run. (Roche Decl. ¶ 24; Clark Decl. ¶ 5, Ex. C, 10:12–25; 11:3-15.)

34. Participants in the foundations program are taught how the Fire Safety Department is run from an engineering standpoint and how to use the department's systems. (Roche Decl. ¶ 25; Clark Decl. ¶ 5, Ex. C, 12:1-4.)

7

35. One of the programs that participants in Foundations are taught how to use is called "TeamOps." (Roche Decl. ¶ 25.; Clark Decl. ¶ 5, Ex. C, 12:2-4.)

36. TeamOps is a program that Crothall's fire department uses to track its work orders. (Roche Decl. ¶ 25; Clark Decl. ¶ 5, Ex. C, 12:5-7.)

37. The other program utilized by the Fire Safety Department that is a part of the Foundations training is called "TeamDocs." (Roche Decl. ¶ 25.; Clark Decl. ¶ 5, Ex. C, 12:10-12;21-25.)

38. TeamDocs houses all of the Fire Safety Department's documents and records. (Roche Decl. ¶ 25; Clark Decl. ¶ 5, Ex. C, 12:10-12;21-25.)

39. The Foundations training program was halted during COVID because employees were unable to gather in a conference room setting so employees such as Pasquarello received training from members within their department and their direct supervisor. (Roche Decl. ¶ 26; Clark Decl. ¶ 5, Ex. C, 12:21-25.)

**Michael Roche's History at Crothall**

40. Michael Roche was hired by Crothall in September 2013 as an Operations Manager. (Roche Decl. ¶ 1.)

41. Roche was promoted to the position of Director of Engineering for Mt. Sinai's School of Medicine in May 2015. (Roche Decl. ¶ 6.)

42. Roche was promoted to the position of Senior Director of Engineering for Mt. Sinai Hospital in February 2018. (Roche Decl. ¶ 6.)

43. Roche's current is Resident Regional Director of Operations. (Roche Decl. ¶ 6.)

44. Roche directly interviews or gives his approval for every individual hired into the Fire Safety Department. (Roche Decl. ¶ 9.)

45. After being promoted to Resident Regional Manager, Roche's direct reports from the Fire Safety Department were Matthew Bond and Rafael Perez. (Roche Decl. ¶ 16.)

46. Roche's non-fire safety direct reports were Douglas Rome –Assistant Director Hospital, Robert Denver - Assistant Director Hospital, Ryan Nowicki – Director School of Medicine, John Barton – Plant Director, James Coyle – Director of Infrastructure, and Jeanine Lai – Finance Manager. Nowicki is an engineer with over 10 years of experience in engineering. Barton has over 40 years of experience in plant operations and engineering and holds CHFM, CEM, Refrigeration and Boiler Operator licenses. Denver has a degree in engineering. Coyle has a degree in engineering and over 25 years of experience in engineering. Rome has a degree in engineering and CHFM, CEM and Refrigeration licenses. Lai has over 30 years of experience in financial accounting. Each employee was compensated commensurate with their experience and tenure, in accordance with Crothall policy. Their salaries as of December 31, 2019 were as follows:

| Name | Title | Annual Salary | Tenure (12/31/19) |
|---|---|---|---|
| Ryan Nowicki | Director | $154, 500 | 5 years |
| John Barton | Director | $212, 581.88 | 13 years |
| Robert Denver | Assistant Director | $ 115, 976.25 | 3 years |
| James Coyle | Director | $177, 225.17 | 2 years |
| Douglas Rome | Assistant Director | $ 115, 908.75 | 3 years |
| Jeanine Lai | Assistant Director | $ 125, 817.53 | 4 years |

(Roche Decl. ¶¶ 76-77.)

9

47. Perez was terminated by Roche in December 2018, and Joseph Jurain was hired as Fire Safety Supervisor to replace him. (Roche Decl. ¶¶ 17-18.)

48. Jurain was over 40 years old when he was hired to work in the Fire Safety Department. (Roche Decl. ¶ 18.)

49. Roche demoted Bond to Fire Safety Compliance Manager because of his poor performance. (Roche Decl. ¶ 22.)

50. The position of Assistant Director of Fire Safety remained vacant until the hire of Joseph Pasquarello. (Roche Decl. ¶ 23.)

51. Any Crothall Assistant Director that desires to purchase an item to help them perform their job duties must submit a formal request. (Roche Decl. ¶ 35., Clark Decl. ¶ 4, Ex. B: 124:12-17, 125: 2-16; 126:7.-23)

52. During his employment, Pasquarello requested a television from Mr. Roche to follow civil unrest in the United States, and a separate large monitor. (Roche Decl. ¶ 35.)

53. Roche informed Pasquarello to draft a formal proposal for the requested monitor but Pasquarello failed to produce a proper proposal. (Roche Decl. ¶ 35.)

54. Roche did not approve any televisions or large monitors for any of his direct reports and any television monitors in their offices were usually taken from a department that had discarded them. (Roche Decl. ¶ 36.)

**Joseph Pasquarello's Work History at Crothall**

55. In the fall of 2019, Pasquarello was interviewed for the position of Assistant Direct of Fire Safety by both Crothall Systems Director, Robert Shaffer and Roche. (Shaffer Decl. ¶ 14.; Roche Decl. ¶ 23.)

56.     Shaffer believed that Pasquarello's background in fire safety, including as a firefighter, would make him a good candidate for the position. (Shaffer Decl. ¶ 14. )

57.     Shaffer relayed his opinion to Roche who made the ultimate decision to hire Pasquarello who was over 40 years old at the time. (Shaffer Decl. ¶ 15; Roche Decl. ¶ 18.)

58.     When Pasquarello began his employment as Assistant Director on November 2, 2019, he had two direct reports – Mathew Bond and Joseph Jurain. (Shaffer Decl. ¶ 14.)

59.     On November 26, 2019, the Fire Safety Department was given approval to install a delayed door at one of the facilities it managed. (Roche Decl. ¶ 30.)

60.     Bond, Pasquarello, Roche, Assistant Director Douglas Rome and Assistant Director Robert Denver were all included on an email chain informing the department of its authority to begin installation of the delayed door. (Roche Decl. ¶ 30)

61.     Delayed doors prevent a door from opening immediately when an individual tries to exit under normal circumstances to prevent unauthorized exits or entrances. The door is designed to allow east exit in emergency situations.

62.     Roche ordered Pasquarello to commence the installation of the delayed door immediately. (Roche Decl. ¶ 32.)

63.     Pasquarello was responsible for the maintenance of fire doors. (Roche Decl. ¶ 32; Clark Decl. Ex.  A, 139:3-6.)

64.     Pasquarello understood that the project involved the installation of a fire door. (Roche Decl. ¶ 32; Clark Decl. Ex. A, 139:14-16.)

65.     On February 10, 2020, Denver followed up with Bond and Pasquarello to determine if the delayed door installation had been completed. (Roche Decl. ¶ 33.)

66. Pasquarello did not complete the installation as ordered by Roche because he believed that they should not be installed as the "subject matter expert." (Roche Decl. ¶ 34.; Clark Decl. Ex. A, 144:17-25.)

67. Roche ordered Pasquarello on September 25, 2020 to have the delayed doors installed by October 16, 2020. (Roche Decl. ¶ 37.)

68. Pasquarello did not keep track of whether the delayed doors were ever installed. (Clark Decl. Ex. A 149:6-7.; Roche Decl. ¶ 37.)

69. On October 29, 2020, Pasquarello received a written job performance assessment from Roche. (Roche Decl. ¶ 38, Ex. B.)

70. The job performance assessment stated that Pasquarello' time management needed improvement, that he continued to close preventative measures on the last day of the month, and that he was failing to complete his interim life-saving measure reviews in a timely manner. (Roche Decl. ¶ 36.)

71. Roche and Pasquarello met weekly to discuss ongoing matters in the Fire Safety Department and the status of projects. (Roche Decl. ¶ 37.)

72. Due to documented recurring and substantial shortcomings, on December 9, 2020, Roche began to write up a counseling for Pasquarello. (Roche Decl. ¶ 38.)

73. Roche withdrew his counseling because after a conversation with Shaffer in which Shaffer agreed to take a more hands-on role in getting Pasquarello to perform his responsibilities appropriately and proficiently after Roche expressed his displeasure with Pasquarello's work product and his intention to write an associate counseling report. (Roche Decl. ¶44 ; Shaffer Decl. ¶ 17.)

74. Shaffer discussed the TeamDocs and TeamOps with Pasquarello who stated that he did not use the programs very often. (Shaffer Decl. ¶ 18 )

75. Shaffer believed that Pasquarello should have known how to use TeamOps and TeamDocs because he had been working for Crothall for over a year, but he claimed to have his own system. (Shaffer Decl. ¶ 19.)

76. Pasquarello conveyed to Shaffer that Bond was responsible for understanding and using TeamDocs and TeamOps. (Shaffer Decl. ¶ 20.)

77. It became clear to Shaffer that Pasquarello simply did not understand his role and was not even trying to meet these expectations set for him. (Shaffer Decl. ¶ 21.)

78. Mt. Sinai Hospital is subject to a tri-annual audit by the Joint Commission – a nationwide healthcare accrediting agency. (Roche Decl. ¶ 45.)

79. The Joint Commission assesses all parts of the hospital to ensure safety and compliance with regulations. Fire safety composes less than 10 percent of the audit, but compliance with the audit during Pasquarello's tenure as Assistant Director required a collaborative process involving individuals from outside of the department. (Roche Decl. ¶¶ 45-48.)

80. In the months leading up to the Joint Commission audit, Pasquarello failed to sufficiently document work orders including whether improperly working doors were fixed. (Roche Decl. ¶ 47.)

81. Due to Pasquarello's failure, an outside vendor had to be used to complete the work orders, and to ensure that the doors were working properly. (Roche Decl. ¶ 48.)

82. The work order "do-over" cost Mt. Sinai approximately $35,000. (Shaffer Decl. ¶ 22.)

4885-8100-1523.1 / 024778-1655

83. According to Crothall policy, and New York City fire safety regulations, a healthcare provider must document whether fire safety devices have been tested properly. (Shaffer Decl. ¶ 23. )

84. Pasquarello was ultimately responsible for scheduling the testing, which was performed by an outside vendor. (Roche Decl. ¶ 49.)

85. On May 10, 2021, Pasquarello failed to provide notice to Crothall's insurance provider – FM Global Risk Management ("FM Global")– of an impairment to a fire pump that services 5 buildings. (Roche Decl. ¶ 50, Ex. C.)

86. As a result, FM Global learned of the defective pump while on an unrelated site visit to the facility. (Roche Decl. ¶ 50, Ex. C.)

87. FM Global recorded the deficiency, which put the Hospital at risk of having their insurance premium increased. (Roche Decl. ¶ 50, Ex. C.)

88. Pasquarello also failed to document and track repairs and life safety deficiencies. (Roche Decl. ¶ 51, Ex. C.)

89. In particular, he failed to document whether an annual fire door inspection had been completed. Roche Decl. ¶ 51, Ex. C.)

90. Roche met with Pasquarello on May 10, 2021 and questioned him about his failure to alert FM Global. (Roche Decl. ¶ 52.)

91. Pasquarello did not believe that he was culpable or responsible for the failure. (Roche Decl. ¶ 52.)

92. At Pasquarello's request, Roche met with him on May 25, 2021 to discuss Pasquarello's work performance and shortcomings. It was clear that Roche felt that Pasquarello's

14

job performance needed substantial improvement and that he was not meeting expectations. (Roche Decl. ¶ 53.)

93. Roche began to draft a performance improvement plan and associate counseling report for Pasquarello. (Roche Decl. ¶ 54.)

94. On May 26, 2021, Pasquarello wrote a letter to Patricia Lazarazo, Crothall's Human Resources Manager stating that he believed that Roche was discriminating against him because of his age. (Roche Decl. ¶ 55.)

95. Human Resources opened an investigation into Pasquarello's allegations on May 27, 2021. (Roche Decl. ¶ 56.)

96. On June 4, 2021, Human Resources' investigation into Pasquarello's allegations concluded, and it was determined that Roche had not discriminated against him. (Roche Decl. ¶ 57.)

97. Roche requested permission from Human Resource to move forward with counseling and issuing a PIP to Pasquarello. (Roche Decl. ¶ 58.)

98. Roche received the authority to issue the PIP to Pasquarello on June 9, 2021, and he issued the counseling and PIP to Pasquarello on June 10, 2021 as a result. (Roche Decl. ¶ 59, Ex. C.)

99. The PIP required Pasquarello to meet the following standards:

- Timely completion and closing of all preventative maintenance tasks completed by a vendor or in house Fire Safety staff.

- Attend all required meetings or let the organizer know that you will not attend at least one hour in advance of the scheduled start time.

- Obtain all required certificates of fitness required for Fire Marshals (except Z-89/F-89).

- To obtain his F-89 that he was told to acquire at the start of his employment in October 2019 and his annual review in 2020.

- Ensure all regulatory documentation for the previous month is received, reviewed and uploaded to TeamDocs by the 10th of the current month.

- Ensure life safety work orders are created for all life safety deficiencies by the next business day per your current procedure.

- Ensure all urgent impact ILSM are completed properly and closed out in TeamOps within 24 hours.

(Roche Decl. ¶ 59; Ex. C)

100. After being placed on the PIP, Pasquarello met regularly with Roche to discuss areas where improvement was required, however, he continued to fall short of expectations. (Roche Decl. ¶ 60.)

101. Thus, Pasquarello received a second counseling on July 19, 2021, after he failed to close a preventive maintenance task promptly and left other tasks open. (Roche Decl. ¶ 61; Ex. D. Clark Decl. ¶ 4, Ex. 86:25, 87:2-12)

102. Pasquarello failed to close out work order #503212 by the required timeframe, and he failed to implement an interim life safety measure (ILSM)—a process by which the fire safety team identifies the measures required to be taken if a fire emergency occurs if a particular function, such as a door, failed. (Roche Decl. ¶ 61-62; Ex. D.)

103. It was Pasquarello's responsibility to assess what measures would need to be taken and provide a determination. (Roche Decl. ¶ 63.)

104. Pasquarello's failure to implement the ILSM placed Crothall and Mt. Sinai in violation of fire safety codes and subject to legal liability. (Roche Decl. ¶ 63.)

105. ILSM are designed to protect the health and safety of every individual at the Hospital by creating emergency contingencies – it is a core duty of the Fire Safety Department. (Roche Decl. ¶ 63.)

106. Following the July 2021 counseling, Pasquarello wrote to Human Resources stating that the counseling was invalid and retaliatory. (Roche Decl. ¶ 64.)

107. Human Resources opened an investigation into Plaintiff's allegations, and it was determined that Pasquarello had not been subject to retaliation. (Roche Decl. ¶ 64.)

108. On September 20, 2021, Roche presented Pasquarello with a PIP assessment, evaluating whether he met the goals of his PIP. (Roche Decl. ¶ 68, Ex. E.)

109. The assessment stated that during the month of June, Pasquarello failed to timely complete and close all preventative maintenance tasks completed by a vendor or in house Fire Safety staff, which resulted in a second progressive counseling. (Roche Decl. ¶68.)

110. The PIP assessment further stated that Pasquarello struggled to ensure all regulatory documentation for the August was received, reviewed and uploaded by September 10, 2021. (Roche Decl. ¶ 69.)

111. The PIP assessment also stated that Pasquarello failed to ensure all urgent impact ILSM were completed properly and closed out in TeamOps within 24 hours during the month of June. (Roche Decl. ¶ 69.)

112. Despite these critiques, Roche had no intention to terminate Pasquarello. (Roche Decl. ¶ 70.)

113. Pasquarello resigned his employment on September 21, 2021. (Roche Decl. ¶ 72.)

Dated: October 4, 2022
      New York, New York

                                        */s/ Shawn M. Clark*
                                        Shawn M. Clark
                                        Zack G. Sharpe, IV
                                        LITTLER MENDELSON, P.C.
                                        900 Third Avenue
                                        New York, New York 10022.3298
                                        212.583.9600

                                        *Attorneys for Defendant*

4885-8100-1523.1 / 024778-1655