UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSEPH PASQUARELLO,

            Plaintiff,

    -against-

CROTHALL HEALTHCARE, INC. and
MICHAEL ROCHE,

            Defendants.

No. 21-cv-08732 (JMF)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Shawn Matthew Clark
Zack G. Sharpe, IV
LITTLER MENDELSON, P.C.
900 Third Avenue
New York, NY 10022.3298

*Attorneys for Defendants*

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ............................................................................... 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ........................................................................................................ 6

    I.     PLAINTIFF DID NOT SUFFER A MATERIALLY ADVERSE
          EMPLOYMENT ACTION UNDER DISCRIMINATORY
          CIRCUMSTANCES ................................................................................... 8

          A.    Associate Counseling Reports and PIP ...................................... 8

          B.    Crothall's Hiring of a Fire Safety Director ................................ 9

    II.    DEFENDANTS HAD LEGITIMATE NONDISCRIMINATORY
          REASONS FOR DISCIPLINING PLAINTIFF AND HIRING A FIRE
          SAFETY DIRECTOR ............................................................................ 10

    III.   PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS'
          LEGITIMATE NON-DISCRIMINATORY REASONS ARE
          PRETEXTUAL ....................................................................................... 12

          A.    Plaintiff Is Not Similarly Situated to Other Assistant Directors .............. 13

          B.    The Satisfactory Joint Commission Report Does Not Evidence
               Pretext ...................................................................................... 15

          C.    The Same Actor Inference Refutes Any Inference That Plaintiff
               Was Subjected to Discriminatory Treatment Based on His Age ............. 17

    IV.   PLAINTIFF WAS NOT TREATED LESS WELL BECAUSE OF HIS
          AGE ...................................................................................................... 18

    V.    PLAINTIFF CANNOT ESTABLISH THAT HE WAS SUBJECT TO
          RETALIATION FOLLOWING HIS COMPLAINTS OF AGE
          DISCRIMINATION ............................................................................... 19

    VI.   PLAINTIFF CANNOT ESTABLISH THAT HE WAS SUBJECT TO
          PAY DISPARITIES BASED ON HIS AGE ...................................... 22

CONCLUSION ..................................................................................................... 23

## Cases

*Adams v. Canon USA, Inc.*,
No. CIV 07-3512, 2009 WL 3064856 (E.D.N.Y. Sept. 22, 2009) ........................................18

*Anyanwu v. City of New York*,
No. 10 CIV. 8498 (AJN)(THK), 2013 WL 5193990 (S.D.N.Y. Sept. 16, 2013) ...................13

*Blythe v. City of N.Y.*,
No. 08-CV-2843 (RRM) (CLP), 2013 U.S. Dist. LEXIS 109701 (E.D.N.Y.
Aug. 5, 2013) .................................................................................................................9

*Browne v. City Univ. of N.Y.*,
419 F. Supp. 2d 315 (E.D.N.Y. 2005) ..........................................................................9

*Crawford-Bey v. New York & Presbyterian Hosp.*,
No. 08-CV-5454, 2011 WL 4530193 (S.D.N.Y. Sept. 30, 2011) .................................7

*Cretella v. Liriano*,
633 F. Supp. 2d 54 (S.D.N.Y. 2009), *aff'd*, 370 F. App'x 157 (2d Cir. 2010) ...............13, 14

*Downey v. Adloox, Inc.*,
789 F. App'x 903 (2d Cir. 2019) ................................................................................17

*Dowrich-Wks. v. Cooper Square Realty, Inc.*,
535 F. App'x 9 (2d Cir. 2013) ......................................................................................9

*Eichler v. Am. Int'l Group, Inc.*,
No. 05-CV-5167, 2007 WL 963279 ...........................................................................10

*Farmer v. Shake Shack Enterprises*,
LLC, 473 F. Supp. 3d 309 (S.D.N.Y. 2020) ..........................................................17, 20

*Felty v. Regeneron Pharms., Inc.*,
No. 18 CIV. 5667 (NSR), 2021 WL 860379 (S.D.N.Y. Mar. 8, 2021) ......................9

*Ferraro v. Kellwood Co.*,
440 F.3d 96 (2d Cir. 2006) .........................................................................................10

*Galabya v. N.Y.C. Bd. of Educ.*,
202 F.3d 636 (2d Cir. 2000) ..........................................................................................8

*Gorzynski v. Jetblue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010) .........................................................................................19

*Grady v. Affiliated Cent., Inc.*,
130 F.3d 553 (2d Cir. 1997)................................................................18

*Hardy v. Rochester Genesee Reg'l Transp. Auth.*,
906 F. Supp. 2d 178 (W.D.N.Y. 2012)............................................20, 21

*James v. New York Racing Ass'n*,
233 F.3d 149 (2d Cir. 2000)...............................................................12

*Joseph v. Leavitt*,
465 F.3d 87 (2d Cir. 2006)...................................................................9

*Kassman v. KPMG LLP*,
925 F. Supp. 2d 453 (S.D.N.Y. 2013)..............................................22, 23

*Konteye v. N.Y.C. Dep't of Educ.*,
No. 17-CV-2876, 2019 WL 3229068 (S.D.N.Y. Jul. 18, 2019) .................13

*Lavin–McEleney v. Marist Coll.*,
239 F.3d 476 (2d Cir.2001)..................................................................22

*Lebowitz v. N.Y.C. Dep't of Educ.*,
407 F. Supp. 3d 158 (E.D.N.Y. 2017) ...................................................7

*Lehman v. Bergmann Assocs., Inc.*,
11 F. Supp. 3d 408 (W.D.N.Y. 2014) ...................................................22

*Mabry v. Neighborhood Def. Serv.*,
769 F. Supp. 2d 381 (S.D.N.Y. 2011)....................................................6

*Mattera v. JPMorgan Chase Corp.*,
740 F. Supp. 2d 561 (S.D.N.Y. 2010)...................................................16

*Maynard v. Montefiore Med. Ctr.*,
No. 18-CV-8877, 2021 WL 396700 (S.D.N.Y. Feb. 4, 2021)....................8

*McBride v. BIC Consumer Products Mfg. Co.*
583 F.3d 92 (2d Cir. 2009)....................................................................7

*McGill v. Univ. of Rochester*,
600 F. App'x 789 (2d Cir. 2015) ..........................................................8

*McGuiness v. Lincoln Hall*,
263 F.3d 49 (2d Cir. 2001)..................................................................13

*Middleton v. Metro. Coll. of N.Y.*,
   545 F. Supp. 2d 369 (S.D.N.Y. 2008).......................................................................20

*Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*,
   703 F. Supp. 2d 230 (E.D.N.Y. 2010) ......................................................................16

*Napoleoni v. N.Y.C. Dep't of Parks & Recreation*,
   No. 18-CV-2578 (MKB), 2018 WL 3038502 (E.D.N.Y. June 18, 2018) .............20

*Pa. State Police v. Suders*,
   542 U.S. 129 (2004)....................................................................................................10

*Pena v. Brattleboro Retreat*,
   702 F.2d 322 (2d Cir. 1983)........................................................................................10

*Potash v. Florida Union Free Sch. Dist.*,
   972 F. Supp. 2d 557 (S.D.N.Y. 2013)........................................................................19

*Regis v. Metrop. Jewish Geriatric Ctr.*,
   No. 97-CV-906 (ILG), 2000 WL 264336 (E.D.N.Y. Jan. 11, 2000).....................10

*Reichman v. City of N.Y.*,
   179 A.D.3d 1115 (1st Dep't 2020), *leave to appeal denied*, 36 N.Y.3d 904,
   160 N.E.3d 1280 (2021)...............................................................................................20

*Richards v. N.Y.C. Dep't of Educ.*,
   No. 13-CV-16, 2015 WL 4164746 (S.D.N.Y. July 10, 2015) ..................................7

*Richardson v. N.Y. State Dep't of Corr. Serv.*,
   180 F.3d 426 (2d Cir. 1999).........................................................................................8

*Rosenberg v. Chesapeake Pharm. and Health Care Packaging*,
   888 F. Supp. 2d 302 (E.D.N.Y. 2012) ........................................................................7

*Schnabel v. Abramson*,
   232 F.3d 83 (2d Cir. 2000)..........................................................................................17

*Shabat v. Billotti*,
   108 F.3d 1370 (2d Cir. 1997)......................................................................................16

*Shabat v. Blue Cross Blue Shield*,
   925 F. Supp. 977 (W.D.N.Y. 1996), *aff'd sub nom. Shabat v. Billotti,* 108 F.3d
   1370 (2d Cir. 1997)......................................................................................................16

*Shumway v. United Parcel Serv., Inc.*,
    118 F.3d 60 (2d Cir. 1997)............................................................................13

*Slattery v. Swiss Reinsurance Am. Corp.*,
    248 F.3d 87 (2d Cir. 2001)...........................................................................20

*Tanay v. St. Barnabas Hosp.*,
    No. 99-CV-9215 2001 WL 262695 (S.D.N.Y. Mar. 15, 2001) ................................7

*Torre v. Charter Commc'ns, Inc.*,
    493 F. Supp. 3d 276 (S.D.N.Y. 2020).........................................................7

*Varno v. Canfield*,
    664 F. App'x 63 (2d Cir. 2016) ...................................................................17

*Whidbee v. Garzarelli Food Specialties, Inc.*,
    223 F.3d 62 (2d Cir. 2000)...........................................................................10

**Statutes**

ADEA ....................................................................................................6, 15, 20

Federal Equal Pay Act ...............................................................................22

New York City Human Rights Law............................................................20

NYSEPA.................................................................................................22, 23

**Other Authorities**

City Law.....................................................................................................18

NYLL § 194................................................................................................22

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff Joseph Pasquarello voluntarily resigned his position as the Assistant Director of Fire Safety for Crothall Healthcare, Inc. ("Crothall"), which oversees fire safety management at Mount Sinai Hospital in New York, after nearly two years of poor performance that culminated in his placement on a performance-improvement-plan ("PIP"). He filed this action against Defendant Crothall and his former supervisor Michael Roche, alleging Defendants discriminated against him based on his age, retaliated against him after he complained about the purported discrimination, and unlawfully compensated him less than similarly-situated younger comparators. Defendants now move for summary judgment on each of Plaintiff's claims. For the reasons that follow, Plaintiff's Complaint should be dismissed in its entirety.

First, Pasquarello did not suffer an adverse employment action. He voluntarily resigned his employment. The two disciplinary writes-ups he received and the PIP Crothall placed him on were not materially adverse since they did not result in termination or any decrease in salary or title. Similarly, Pasquarello was not demoted or constructively discharged when Crothall hired a director to oversee the Fire Safety Department. Indeed, Pasquarello's salary, title, responsibilities, and other terms and conditions of employment remained unchanged between July 2021 when Crothall hired the director, and September 2021 when Pasquarello resigned.

Second, whether or not they were adverse employment actions, Crothall had legitimate nondiscriminatory reasons for disciplining Pasquarello and hiring a director to oversee him and the Fire Safety Department. The Fire Safety Department Pasquarello managed was inefficient, disorganized, and repeatedly failed to document necessary work orders including quality control and safety assessments. The result of this disorganization was that Mt. Sinai Hospital, Crothall's client, had little or no documentation that fire safety devices were properly tested and fire safety issues were timely addressed, putting the Hospital's accreditation and compliance with fire safety

regulations and standards at risk. When confronted with his failings on numerous occasions, Plaintiff blamed others, including most notably the employees he was responsible for supervising. Eventually, however, those employees transferred out of the Fire Safety Department Pasquarello managed, or separated from employment with Crothall, and there was no one left for Pasquarello to blame. In the summer of 2021, Pasquarello received disciplinary write-ups on two separate occasions for documentation failures, and he was placed on a PIP to address the issues. Rather than admit his failings and improve his performance, he filed unfounded Human Resources complaints against his manager and then resigned his employment.

Third, there is no evidence that that performance issues identified in Pasquarello's write-ups and PIP were a pretext for unlawful age discrimination. It is undisputed that Pasquarello failed to document repairs to life-saving fire safety devices, and failed to close preventative maintenance tasks and worker orders timely. Notably absent from the factual record is any evidence that a younger comparator had similar performance deficiencies but was not discipled. To the contrary, Plaintiff's younger predecessor was demoted by the individual defendant Plaintiff accuses of age discrimination. Also absent from the factual record is any evidence that anyone made an age-based remarks. Finally, the fact that the same actor who hired Pasquarello, after interviewing him, is the same person who disciplined Pasquarello, undermines any suggesting that the discipline, or any other actions, were motivated by Pasquarello's age.

Fourth, Plaintiff's retaliation claims fail because there is no causal connection between his complaints of discrimination and his discipline. The issues he disciplined for arose long before Plaintiff's complaints, and Plaintiff's supervisor, Michael Roche, formed the intent to discipline him, and even drafted a disciplinary write up, Plaintiff long before Plaintiff complained.

Fifth, salaries at Crothall are based on job function, experience, and tenure with the company. There is no evidence that Plaintiff was paid less because of his age. During the majority of his employment, he was the highest paid member of the Fire Safety Department and he was paid more than his younger predecessor in the same role. The individuals Plaintiff compares himself to are not true comparators. Many are engineering employees with college or advanced degrees in engineering, and long tenures with Crothall.

For all of these reasons, as they are argued more fully below, Defendants' motion for summary judgment should be granted and Plaintiff's complaint should be dismissed in its entirety.

<u>**STATEMENT OF FACTS**</u>

Crothall is a leading healthcare support services provider, and provides support to hospitals and health systems across the country. (SUF ¶¶ 1-3.) Mount Sinai Health System is a healthcare network and a Crothall client. (SUF ¶ 4.) Mount Sinai Health System's has a hospital (the "Hospital") in Manhattan, New York. Crothall has provided management services to since 2013. (SUF ¶ 7.) Throughout most of 2013, Robert Shaffer – managed and performed the duties of the Fire Safety Department individually. (SUF ¶ 7.) In 2015, Crothall restructured its departments and Shaffer transitioned to the position of Systems Director where he oversees all of the Hospital's campuses. (SUF ¶ 10.) Shortly thereafter, William VanWart was named Director of Fire Safety to replace Shaffer. (SUF ¶ 11.) Mark Matthews and Matthew Bond were hired to support VanWart as Fire Safety Manager and Fire Safety Supervisor. (SUF ¶ 12.)

After years of turnover within the Fire Safety Department, which left the position of Director of Fire Safety vacant, Bond was promoted to Assistant Fire Safety Director in 2017. (SUF ¶ 20.) His salary upon hire was $112,000 dollars. (SUF ¶ 19.) On September 29, 2019, Bond was demoted to Fire Safety Supervisor, and his salary was reduced to $104,000 dollars. (SUF ¶ 22.) The position of Director of Fire Safety was vacant, at the time of Bond's demotion. The position

of Assistant Director of Fire Safety also remained vacant until November 2, 2019, when Joseph Pasquarello was hired. (SUF ¶ 25.) Pasquarello's salary initial salary was $112, 500 dollars. (SUF ¶ 26.)

Pasquarello reported to Roche who is Crothall's Resident Regional Director of Operations. (SUF ¶ 43.) Roche directly interviews or otherwise approves every individual hired into the Fire Safety Management Department. (SUF ¶ 44.) Besides Pasquarello, Roche's direct reports when Pasquarello was hired included Douglas Rome – Assistant Director Hospital, Robert Denver – Assistant Director Hospital, Ryan Nowicki – Director School of Medicine, John Barton – Plant Director, James Coyle – Director of Infrastructure, and Jeanine Lai – Finance Manager. (SUF ¶ 46.)

Typically, Crothall Fire Safety Department managers, supervisors and directors undergo a training program called "Foundations" as part of their job orientation that teaches them how the Fire Safety Department functions and the programs it uses to complete its duties. (SUF ¶ 33.) The two programs that the Fire Safety Department uses are TeamsOps – which tracks work orders, and TeamDocs – which houses the Fire Safety Department's documents and records. (SUF ¶ 35-38.) The Foundations program was halted during COVID, and Pasquarello could not participate in program. (SUF ¶ 39.) In lieu of Foundations, he received training from Bond, Roche and Shaffer. (*Id.*)

On November 26, 2019, the Fire Safety Department was told to install a delayed door at one of the Mt. Sinai facilities it manages. (SUF ¶ 59.) Roche told Pasquarello to install the door. (SUF ¶ 62.) On February 10, 2020, Pasquarello admitted that he never had the doors installed and that they were unnecessary based on his opinion as "subject matter expert." (SUF ¶ 65-66.) Roche issued a written performance evaluation to Pasquarello on October 29, 2020. (SUF ¶ 69-70.) The

performance evaluation outlined Pasquarello's deficiencies in time management and failing to complete preventive measures promptly. (SUF ¶ 70.)

Roche drafted a disciplinary associate counseling report for Pasquarello on December 9, 2020, because of his lack of improvement on the issues outlined in his October 2020 assessment. (SUF ¶72.) After conferring with Schaffer, who agreed to mentor and train Pasquarello, Roche withdrew the counseling. (SUF ¶ 73.) Pasquarello admitted to Schaffer he did not use TeamDocs or TeamOps frequently, and claimed to have his own system of tracking documents and work orders. (SUF ¶ 74-75.)

The Hospital is subject to a tri-annual Joint Commission Report. (SUF ¶ 78.) The Joint Commission Report assesses all parts of the Hospital to ensure safety and compliance with regulations. (SUF ¶ 79.) Pasquarello failed to properly document preventative measures in months leading to the Joint Commission Report. (SUF ¶ 80.) He failed to document necessary work orders, including whether malfunctioning doors had been fixed. (*Id*.) Following Pasquarello's failure, an outside vendor was hired to complete the work orders, and to ensure that the doors were working properly. (SUF ¶ 81) Hiring the outside vendor cost Mt. Sinai approximately $35,000 dollars. (SUF ¶ 82.)

On May 10, 2021, Pasquarello failed to provide notice to Crothall's insurance provider – FM Global Risk Management ("FM Global")– of an impairment to a fire pump that services 5 Mt. Sinai buildings. (SUF ¶ 85.) FM Global learned of the defective pump while on an unrelated site visit to the facility, and recorded the deficiency. (SUF ¶¶ 86-88.) Recorded deficiencies put Mt. Sinai at risk of having its insurance premium increased. (SUF ¶ 87.) Pasquarello refused to accept responsibility when Roche questioned him about failing to notify FM Global. (SUF ¶ 91.) On May 25, 2021, Roche and Pasquarello met to discuss his work performance. (SUF ¶ 92.) Roche

was straightforward about his dissatisfaction with Pasquarello's work performance. (*Id*.) Shortly after the meeting, Roche drafted a disciplinary counseling for Pasquarello. (SUF ¶ 93.)

The next day, May 26, 2021, Pasquarello wrote a letter to Crothall's Human Resources manager Patricia Lazarazo alleging age discrimination by Roche. (SUF ¶ 94.) Human Resources investigated these allegations and concluded on June 4, 2021, that Roche did not discriminate against Pasquarello. (SUF ¶ 96.) Five days later, on June 9, 2021, Human Resources approved the PIP that Roche drafted for Pasquarello, which he received on June 10, 2021. (SUF ¶¶ 98-99.) The PIP stated that Pasquarello must complete preventive maintenance tasks promptly. (SUF ¶ 99.) Pasquarello was given a disciplinary associate counseling report on July 19, 2021, after failing to meet that requirement. (SUF ¶ 101.) The July 19, 2021, associate counseling report stated that Pasquarello had failed to implement an interim life safety measure (ILSM)—a process by which the Fire Safety Department identifies the measures required to be taken if a fire emergency occurs if a particular function, such as a door, failed. (SUF ¶ 102.) On July 30, 2021, Pasquarello wrote to Human Resources alleging that his disciplinary associate counseling report was retaliatory for filing his previous complaint. (SUF ¶ 64.) After an investigation, Human Resources determined that Pasquarello was not retaliated against. (SUF ¶ 107.)

Roche drafted a PIP assessment for Pasquarello on September 20, 2021. (SUF ¶ 108.) The assessment states that while Pasquarello had not met all of its goals, he had shown progress. Pasquarello resigned from his employment on September 21, 2021, and never received the final assessment. (SUF ¶ 113.)

## ARGUMENT

A plaintiff alleging discrimination under the ADEA "must nevertheless allege the essential elements of an employment discrimination claim—that plaintiff suffered discrimination on the basis of protected status." *Mabry v. Neighborhood Def. Serv*., 769 F. Supp. 2d 381, 392 (S.D.N.Y.

2011). In other words, a plaintiff must show that: (1) he was a member of a protected class; (2) he was competent to perform the job at-issue, or was performing the job duties satisfactorily; (3) he suffered a materially adverse employment action; and (4) the action occurred under circumstances that cause an inference of discrimination. *McBride v. BIC Consumer Products Mfg. Co*., Inc., 583 F.3d 92, 96 (2d Cir. 2009); *Torre v. Charter Commc'ns, Inc*., 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020); *Lebowitz v. N.Y.C. Dep't of Educ*., 407 F. Supp. 3d 158, 170 (E.D.N.Y. 2017).

To establish a prima facie case of discrimination under the NYSHRL, Plaintiff must show: (i) that he is a member of a protected group; (ii) that he was qualified for his position; (iii) that he was discharged or suffered another adverse employment action; and (iv) the adverse employment action occurred in circumstances giving rise to an inference of discrimination. *Crawford-Bey v. New York & Presbyterian Hosp.*, No. 08-CV-5454, 2011 WL 4530193, at *3 (S.D.N.Y. Sept. 30, 2011). If Plaintiff is able to meet her prima facie case, Defendants must then present a legitimate, non-discriminatory reason for their actions. *Id*. Defendants' burden "is not a particularly steep hurdle". *Rosenberg v. Chesapeake Pharm. and Health Care Packaging*, 888 F. Supp. 2d 302, 309 (E.D.N.Y. 2012). If Defendants are able to articulate a non-discriminatory reason for their actions, the burden then shifts back to Plaintiff to prove that the stated reasons are a pretext for discrimination. *Richards v. N.Y.C. Dep't of Educ.*, No. 13-CV-16, 2015 WL 4164746, at *6 (S.D.N.Y. July 10, 2015). The burden to prove intentional discrimination remains with Plaintiff at all times. *Tanay v. St. Barnabas Hosp.*, No. 99-CV-9215 2001 WL 262695, at *4 (S.D.N.Y. Mar. 15, 2001).

The NYCHRL employs a more liberal standard, requiring a plaintiff to demonstrate (1) that he was a member of a protected class, (2) that he was qualified for the position, and (3) that he was treated differently from others because of his protected status in a way that was more than

trivial, insubstantial, or petty. *Maynard v. Montefiore Med. Ctr.*, No. 18-CV-8877, 2021 WL 396700, at *5 (S.D.N.Y. Feb. 4, 2021).

As set forth more fully below, Plaintiff cannot meet his burden to establish a *prima facie* case of discrimination under the federal, state, or city standards, and cannot show that Defendants legitimate, non-discriminatory reasons are a pretext for discrimination.

## I.    PLAINTIFF DID NOT SUFFER A MATERIALLY ADVERSE EMPLOYMENT ACTION UNDER DISCRIMINATORY CIRCUMSTANCES

Plaintiff's discrimination claims fail, as an initial matter, because he did not suffer an adverse employment action under circumstances giving rise to an inference of discrimination. *McGill v. Univ. of Rochester*, 600 F. App'x 789, 790 (2d Cir. 2015). "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citing *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)). For an employment action to be adverse, it must result in a materially adverse change in the terms and conditions of employment that is more disruptive than a mere inconvenience or an alteration of job responsibilities. 202 F.3d at 640. Thus, "[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id*. Plaintiff here cannot establish that he endured a materially adverse change in the terms and conditions of his employment.

### A.    Associate Counseling Reports and PIP

Plaintiff did not suffer an adverse employment action from the negative feedback he received about his performing including the two disciplinary associate counseling reports and PIP he received. Indeed, it is well-settled negative evaluations, written reprimands, and disciplinary

meetings do no constitute adverse employment actions "absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss." *Browne v. City Univ. of N.Y.*, 419 F. Supp. 2d 315, 332 (E.D.N.Y. 2005) (collecting cases); *see also Blythe v. City of N.Y.*, No. 08-CV-2843 (RRM) (CLP), 2013 U.S. Dist. LEXIS 109701, at *27 (E.D.N.Y. Aug. 5, 2013) ("the discipline plaintiff suffered . . . including receiving a reprimand, attending a disciplinary meeting, and receipt of . . . disciplinary letter [] was not a materially adverse change"). And there is no evidence here that Plaintiff suffered some accompanying adverse result because of the associate counseling reports. On the contrary, Plaintiff's title and compensation remained unchanged, and Roche confirmed in writing that Plaintiff completed his PIP. (SUF ¶¶ 108-111.)

### B. Crothall's Hiring of a Fire Safety Director

Plaintiff also did not suffer an adverse employment action when Crothall hired Nunez in July 2021. Between July 2021 and Plaintiff's voluntary resignation, Plaintiff's title, salary, and responsibilities remained unchanged. All that changed was his report relationship (from Roche to Nunez). And that is insufficient to establish an adverse employment action. *See Dowrich-Wks. v. Cooper Square Realty, Inc.,* 535 F. App'x 9, 12 (2d Cir. 2013) (no adverse employment action where plaintiff "alleges no facts supporting her conclusory assertion that she was 'demoted,' such as her having received 'a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation') (citing *Joseph v. Leavitt*, 465 F.3d 87, 90 (2d Cir. 2006)).

Insofar as Plaintiff alleges he was constructively discharged by Nunez's hiring (although not expressly pled in his complaint), that claim fails too. A "'[c]onstructive discharge of an employee occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily.'" *Felty v. Regeneron Pharms., Inc.*, No. 18 CIV. 5667 (NSR), 2021 WL 860379, at *20 (S.D.N.Y. Mar. 8,

2021) (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000)). To meet this standard, an employee's working conditions must be so intolerable that a reasonable person subject to them would resign. *Pa. State Police v. Suders*, 542 U.S. 129, 153 (2004); *Ferraro v. Kellwood Co.*, 440 F.3d 96, 101 (2d Cir. 2006). Thus, an employee cannot establish a constructive discharge claim where the employee remained employed after the required threshold of intolerability was met. *Pena v. Brattleboro Retreat*, 702 F.2d 322, 326 (2d Cir. 1983) (no constructive discharge where defendant's employees "were asking [plaintiff] to stay on as a general supervisor"); *Eichler v. Am. Int'l Group, Inc.,* No. 05-CV-5167, 2007 WL 963279, at *18 (no constructive discharge where plaintiff's resignation letter "stated that her resignation would take effect two weeks hence," because "if the environment to which she was subjected had reached the required threshold of intolerability, she would have made her resignation effective immediately"); *Regis v. Metrop. Jewish Geriatric Ctr.*, No. 97-CV-906 (ILG), 2000 WL 264336, at *12 (E.D.N.Y. Jan. 11, 2000) ("An employee who remains on the job while looking for alternative employment is hard-pressed to establish that her working conditions were intolerable").

Here, Plaintiff was not constructively discharged by Nunez's hire more than two month before Plaintiff voluntarily resigned. And there is no evidence that Crothall or Roche intentionally made Plaintiff's working environment so intolerable that any reasonable employee would have felt compelled to resign.

## II. DEFENDANTS HAD LEGITIMATE NONDISCRIMINATORY REASONS FOR DISCIPLINING PLAINTIFF AND HIRING A FIRE SAFETY DIRECTOR

Plaintiff was hired with the expectation that his background in fire safety would help him provide sound management and stability to Crothall's Fire Safety Management Team. But despite receiving training from Roche, Bond, and Schaffer (SUF ¶ 39.), Plaintiff simply failed to perform his job duties to the level expected of him. Pasquarello believed that he could pick and choose,

which aspects of his job duties applied to him and which aspects were the sole responsibility of his direct reports. (SUF ¶¶ 69-70.) Pasquarello "had his own system," which resulted in missed deadlines and costly and potentially dangerous documentation omissions. (SUF ¶ 75.) These failures resulted in his placement on a performance-improvement-plan and the counseling he received in June and July 2021. (SUF ¶¶ 98-105.) Plaintiff's attempt to categorize his documented failures as discriminatory or biased are meritless.

In as early as November 2019 – only a month after he began employment with Crothall – Pasquarello disregarded a direct order from his manager Roche. (SUF ¶¶ 59-66.) Plaintiff failed to have fire safety doors installed because he disagreed with their installation and felt that his judgment was superior. (SUF ¶ 71.) With full knowledge of Crothall's expectations, he failed to acquire the certifications required for his position (SUF ¶ 21), and blamed any department shortcomings on his direct reports. (SUF ¶ 52.) Plaintiff routinely closed at open work orders at the eleventh hour despite being despite being ordered to close them at an earlier date. (SUF ¶ 70.) These issues came to ahead in the summer of 2021.

On June 10, 2021, Pasquarello was issued his first disciplinary associate counseling and placed on a PIP. The discipline and PIP was a result of Plaintiff's conduct in May 2021. (SUF ¶¶ 87-89, 98-102.) On May 10, 2021, Pasquarello failed to notify FM Global about an impairment to a fire pump that services 5 Mt. Sinai buildings. (SUF ¶ 85.) After learning of the defective pump, FM Global recorded the deficiency, which put Mt. Sinai at risk of having its insurance premium increased. (SUF ¶ 87.) Pasquarello refused to accept responsibility when Roche questioned him about failing to notify FM Global. (SUF ¶ 91.) Pasquarello also failed to document and track various other repairs and life safety deficiencies throughout May 2021. (SUF ¶¶ 88-89.)

Plaintiff was issued an associate counseling report and a PIP solely because of his repeated disregard for his job responsibilities.

Even after being placed on the PIP, Pasquarello failed to perform his job duties which led to his second disciplinary associate counseling on July 19, 2021. (SUF ¶101.)  The July 19, 2021, associate counseling report outlined that during the months of June and July, Pasquarello had failed to implement an ILSM, which the Fire Safety Department is responsible for implementing as precaution in the event that a fire emergency occurs. (SUF ¶ 102.)

All of these failures for duties clearly outlined in his job description demonstrated Pasquarello's refusal to embrace the full scope of his responsibilities. (SUF ¶¶ 20-21.)  The position of Assistant Fire Safety Director is of utmost importance. (SUF ¶¶ 20.)  Any failure to both document and perform one's duties, can be both dangerous and costly. (SUF ¶¶ 60-62, 82.) Failing to document whether a test was performed may place lives in danger and can cause Mt. Sinai to run afoul of city, state and federal regulations and force it to expend resources to have testing redone. (SUF ¶¶ 82. 104.)  Pasquarello's PIP and associate discipline reports were the result of behavior that began from the moment that he was hired, and did not show signs of improvement. (SUF ¶¶ 59-66, 85-106.)

## III.   PLAINTIFF CANNOT ESTABLISH THAT DEFENDANTS' LEGITIMATE NON-DISCRIMINATORY REASONS ARE PRETEXTUAL

Having articulated legitimate, nondiscriminatory reasons for Defendants' actions, Defendants are "entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). Plaintiff cannot meet this burden.

## A.    Plaintiff Is Not Similarly Situated to Other Assistant Directors.

Plaintiff seeks to compare himself to younger assistant directors who were not subject to the same deadline requirements as him, and to Bond – his direct report. (*See, e.g.* Compl. at ¶¶ 88, 109, 113). However, Plaintiff cannot establish pretext by comparing himself to his younger colleagues because Plaintiff is not similarly situated to them. "To be 'similarly situated,' the individuals with whom [Plaintiff] attempts to compare [himself] must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997). Thus, "significant distinctions between the plaintiff's situation and the other employees' suggest 'that the defendant's treatment of those employees had no logical relevance to the plaintiff's claims.'" *Anyanwu v. City of New York*, No. 10 CIV. 8498 (AJN)(THK), 2013 WL 5193990, at *14 (S.D.N.Y. Sept. 16, 2013) (citing *McGuiness v. Lincoln Hall,* 263 F.3d 49, 54 (2d Cir. 2001)).

Throughout his Complaint, Plaintiff compares himself to unnamed "younger" Crothall assistant directors. (*See, e.g.* Compl. at ¶¶ 81, 113, 114). But this false comparison ignores that Crothall's other assistant directors are in entirely different departments than Plaintiff and have different roles. (SUF ¶¶ 16, 23.) To be a proper comparator for Pasquarello, the other employees must be similar in position to him in all material respects. *Konteye v. N.Y.C. Dep't of Educ.*, No. 17-CV-2876, 2019 WL 3229068, at *4 (S.D.N.Y. Jul. 18, 2019) (determining that plaintiff's "conclusory assertions that he was discriminated against" was insufficient to establish pretext because, among other things, plaintiff did not "offer evidence that these individuals were similarly situated in all material respects.") Plaintiff's attempt to analogize his experience as Assistant Director of Fire Safety to employees in entirely different departments is improper and his conclusory allegations do not suffice. *Cretella v. Liriano*, 633 F. Supp. 2d 54, 72 (S.D.N.Y. 2009) (plaintiff's conclusory statements insufficient to demonstrate pretext), *aff'd*, 370 F. App'x 157 (2d Cir. 2010).

Any comparison between the job duties of Pasquarello – an Assistant Director of Fire Safety – and assistant directors of engineering, the school of medicine, plant directors, or any other non-fire safety related position is invalid on its face. These roles have an entirely different duties and qualifications, and Pasquarello fails to demonstrate, which aspects of their jobs overlap. Nowicki, Denver, Coyle and Rome are all engineers – which Pasquarello is not – and had years of experience working with hospitals and Crothall when Pasquarello was hired. (SUF 46.) Lai is an accountant and her duties do not relate to fire safety in any way. (*Id.*) Pasquarello cannot credibly compare himself to more qualified individuals with significantly more experience working with hospitals in different roles. (SUF ¶ 46.) They were employed by Crothall for several years before Pasquarello was hired. (SUF ¶ 46.) Moreover, Pasquarello was not expected to meet accelerated deadlines until after he repeatedly failed to properly document work orders. (SUF ¶ 99.) The other assistant directors were not on PIPs, and subject to the specific guidelines specified with the improvement plan. (SUF ¶¶ 99-100.) It is not uncommon for employees under PIPs to be given specific deadlines and requirements that differ from employees that do not require improvement.

The only true comparator here is Bond, who held the position of Assistant Director before Plaintiff. And he was demoted from his role based on his poor performance. (SUF ¶ 49.) Crothall takes fire safety with the utmost seriousness and there is a clear track record or demoting, transferring or terminating employees who are unable to meet Crothall and the Hospital's expectations. (SUF ¶¶ 11-25, 46-49.)

In sum, the other assistant directors are not similarly situated to Plaintiff in all material respects. Plaintiff cannot point to any other assistant director that had issues with his performance and disregarded the instructions of his manager as earliest as his second month of the job. (SUF ¶¶ 59-66.) Plaintiff also cannot point to any other assistant manager who was on a PIP that was not

subject to stringent documentation and reporting requirements. He cannot point to any similarly tenured Crothall employee, in the same or similar position, that was more highly compensated. His claims are patently false. For these reasons, Plaintiff also cannot establish that he was treated "less well" because of his age as he is required to do under the NYCHRL. Nor can he demonstrate that he suffered adverse actions because of his age as both the ADEA and NYSHRL require.

In a last gap attempt to show disparate treatment, Plaintiff states that at one point, he requested a large monitor so that he could observe national unrest under the auspices of fire safety. (Compl. ¶ 39.) Putting aside the absurdity of requiring a large monitor to follow the events unfolding in the United States, Pasquarello was fully aware that all purchases must go through a formal process. Roche simply asked Pasquarello to write a formal proposal for showing why the requested monitor was necessary and its benefit to fire safety. (SUF ¶ 53.) Pasquarello failed to submit a proper proposal. (*Id*.) Roche did not regularly approve new televisions for younger directors and assistant directors. (SUF ¶ 54.) Most directors received televisions by acquiring televisions that had been discarded by other departments. (SUF ¶ 54.) There is simply no evidence that Plaintiff was treated differently than similarly situated employees.

### B.    The Satisfactory Joint Commission Report Does Not Evidence Pretext.

Plaintiff alleges that Joint Commission "commended his paperwork and diligence throughout the hospital as some of the best they had ever seen." (Compl. ¶ 107.) According to Plaintiff, because of his role in a *Hospital-wide* audit that involved all of Crothall's staff, it was "bizarre" to critique his paperwork. (Compl. ¶ 110.) In other words, whenever the Fire Safety Department had a deficiency, it was the fault of his direct reports or another employee, but any success they received should be credited to him. This is disingenuous and inaccurate.

The preparation for the Joint Commission's audit is not performed by one individual. (SUF ¶ 79.) It is a Hospital-wide audit in which the records, processes and safety procedures of every

department are audited. (*Id.*). The audit of Fire Safety Department composes only a small portion of the overall Joint Commission Audit. (*Id.*) Nevertheless, it is an essential part of the audit, which is why Crothall did not leave it up to Pasquarello. (SUF ¶¶ 80-81.) The Fire Safety Management Team's paperwork was compiled and reviewed by several individuals, including those not within the Fire Safety Management Team. (*Id.*) It was because of the work of those individuals, making sure that Pasquarello's usual documentation errors and omissions were corrected, that the Fire Safety Department's records were in order. (*Id.*) A successful audit cannot be contributed to a single individual – it is a department-wide success. Plaintiff cannot pick and choose, which aspects of Fire Safety Management should be attributed to him. As Assistant Fire Safety Director, he was ultimately responsible for the final result of Fire Safety Management at all times. (SUF ¶ 20.) The fact that the Joint Commission Audit was deemed a success does not excuse him from his repeated documentation failures and shortcomings. *See Mattera v. JPMorgan Chase Corp.,* 740 F. Supp. 2d 561, 574 (S.D.N.Y. 2010) ("claims of prior good performance do not, as a matter of law or logic, mean that present poor performance reviews were unfounded"); *Miller v. Nat'l Ass'n of Sec. Dealers, Inc.,* 703 F. Supp. 2d 230, 246–47 (E.D.N.Y. 2010) (plaintiff could not rely on prior satisfactory performance revaluations to refute performance-based reasons for termination). "To hold otherwise would be to hold that things never change, a proposition clearly without a basis in reality." *Shabat v. Blue Cross Blue Shield,* 925 F. Supp. 977, 988 (W.D.N.Y. 1996) ("prior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual"), *aff'd sub nom. Shabat v. Billotti,* 108 F.3d 1370 (2d Cir. 1997).

Beginning with Plaintiff's performance evaluation on October 20, 2020 – several months before Pasquarello ever complained of age discrimination – it was documented that his time management needed to be proved, and that he continued to close preventative measures on the last

day of the month. (SUF ¶¶ 69-70.) The associate counseling reports he received were merely a continuation of the warning he received several months prior. (SUF ¶¶ 98, 101.) Even though the Joint Commission Audit was successful, it did not excuse Plaintiff from being disciplined for a repeated pattern of activity that preceded the audit and continued after it was completed.

### C.   The Same Actor Inference Refutes Any Inference That Plaintiff Was Subjected to Discriminatory Treatment Based on His Age.

Where the same actor hires and takes a disciplinary action against an employee in a short time period, courts may draw an inference that the firing was not with discriminatory intent. *See Downey v. Adloox, Inc*., 789 F. App'x 903, 907 (2d Cir. 2019); *see also, e.g., Varno v. Canfield*, 664 F. App'x 63, 65 (2d Cir. 2016) ("[Plaintiff] was hired and fired by the same supervisor, creating an inference against discriminatory intent absent ... evidence that the supervisor made any discriminatory comments." This is because when the same actor hires a person already within a protected class, and then later takes disciplinary action against that same person, "it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire." *Farmer v. Shake Shack Enterprises*, LLC, 473 F. Supp. 3d 309, 329 (S.D.N.Y. 2020). Roche, Pasquarello's supervisor, interviewed and then hired him. He began to experience issues with Pasquarello's job performance almost immediately (SUF ¶ 69-70), and planned to issue an associate counseling report as early as December 2020. (SUF ¶72.) Roche was aware that Pasquarello belonged to a protected class when he hired him. His decision to discipline Pasquarello was strictly based on his recurring work performance issues (SUF ¶ 69-70, 85-102.) Further, shortly after Pasquarello's hire, Roche hired Ron Kanterman, *another* employee over 40 to work in the Fire Safety Management Team to support him. (SUF ¶ 27.) Given these undisputed facts, it would be illogical to conclude that Roche was motived by ageist animus in disciplining Plaintiff. *Schnabel v. Abramson*, 232 F.3d 83, 91 (2d Cir. 2000).

The fact that Schaffer, Crothall's System Director who oversees all of its facilities, is over 70 years old (SUF ¶ 2), and was instrumental in hiring Pasquarello, also lost faith in his ability to perform him job, "'strongly suggest[s] that invidious discrimination is unlikely.'" *Adams v. Canon USA, Inc.*, No. CIV 07-3512, 2009 WL 3064856, at *14 (E.D.N.Y. Sept. 22, 2009) (citing *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 560 (2d Cir. 1997)). Schaffer was one of the individuals who interviewed Plaintiff for the position of Assistant Director of Fire Safety, and he dissuaded Roche from issuing Plaintiff a PIP in December 2020, but even he ultimately agreed that Pasquarello performance was subpar. (SUF ¶ 77.) Schaffer offered to directly train Plaintiff to get him up to speed on what his duties entailed. (SUF ¶ 73.) He informed Plaintiff that he needed to know how to use TeamOps and TeamDocs and trained him on how he should record documentation within those systems. (SUF ¶¶ 74-75.) But his efforts were in vain. Pasquarello believed that having a grasp of the Fire Safety Department's core programs was the sole responsibility of Bond and Plaintiff's other direct reports. (SUF ¶ 76.) Schaffer came to realize that Pasquarello simply did not get it and did not *want* to get it. (SUF ¶ 77.) There is simply no basis to infer that Roche's disciplinary actions towards Plaintiff were discriminatory.

## IV.    PLAINTIFF WAS NOT TREATED LESS WELL BECAUSE OF HIS AGE

Plaintiff's State and City Law claims fail for similar reasons. He was not treated "less well" than similarly situated employees.

Plaintiff alleges that he was subject to more stringent standards and treated differently than his younger counterparts at Crothall. (Compl. 24.) Pasquarello claims that he was denied access to equipment, training and staff needed for his department and that he was held responsible for the errors of his younger colleagues. (*Id.*) This is patently false. Pasquarello was not denied any resources because of his age and he does put forth any comments, actions or comparators to support his claims.

Even while on a PIP, Pasquarello maintained his title, salary and benefits. By comparison, his younger predecessor, Matthew Bond was demoted from Assistant Director of Safety to Fire Safety Manager resulting in both a change in title and an $8,000 dollar reduction in salary. (SUF ¶ 22.) Plaintiff fails to identify a single comment, utterance or action that would demonstrate age-based animus towards him from Crothall or Roche. Pasquarello was over 40 years old when he was hired. (SUF ¶ 57.) It is improbable that Crothall and Roche would begin to discriminate against Pasquarello based on his age months after they hired him with full knowledge of his age. Further, Crothall hired Ron Kanterman as a Fire Safety Manager to work under Pasquarello who was also over 40 years of age at his time of hire. (SUF ¶ 27.) Pasquarello's unsubstantiated and conclusory belief that he was discriminated against because of his age does not suffice. A plaintiff must set forth more than such conclusory allegations' to defeat a motion for summary judgment. *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010). Pasquarello's mere subjective belief that he was discriminated against because of his age does not sustain a discrimination claim. *Potash v. Florida Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 589 (S.D.N.Y. 2013). To the contrary, his workplace failures are well-documented. (SUF ¶¶ 73-124; SUF ¶¶ 98, 103, Exs. C-D.)

## V.     PLAINTIFF CANNOT ESTABLISH THAT HE WAS SUBJECT TO RETALIATION FOLLOWING HIS COMPLAINTS OF AGE DISCRIMINATION

Plaintiff alleges that the performance-improvement-plan and associate counseling reports that he received from Roche were in response to his complaints of age discrimination. However, the undisputed facts show that Roche had addressed Plaintiff's deficiencies with him dating back to October 2020 and that disciplinary counseling reports and PIP that he received were the culmination of months of poor performance. (SUF ¶¶ 69-70.)

To establish a prima facie case of retaliation under the ADEA, a plaintiff must show "(1) that [he] participated in a protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Napoleoni v. N.Y.C. Dep't of Parks & Recreation*, No. 18-CV-2578 (MKB), 2018 WL 3038502, at *4 (E.D.N.Y. June 18, 2018). The same is true for a claim of retaliation under the NYSHRL. *Farmer*, 473 F. Supp. 3d at 330. The New York City Human Rights Law requires a plaintiff alleging unlawful retaliation to show that (1) they engaged in a protected activity as that term is defined under the NYCHRL, (2) their employer was aware that they participated in such activity, (3) their employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct. *Reichman v. City of N.Y.*, 179 A.D.3d 1115, 1119 (1st Dep't 2020), *leave to appeal denied*, 36 N.Y.3d 904, 160 N.E.3d 1280 (2021). A claim of retaliation fails where any purportedly adverse action against an employee occurs *before* the employee's participation in a protected activity. *See Middleton v. Metro. Coll. of N.Y.*, 545 F. Supp. 2d 369, 375-76 (S.D.N.Y. 2008) (no causation shown for purposes of satisfying a *prima facie* case of retaliation when the decision to terminate the plaintiff was made before the plaintiff delivered a sexual harassment complaint to the decision maker); *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (temporal proximity alone does not create an inference of causation where "gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity"); *Hardy v. Rochester Genesee Reg'l Transp. Auth.*, 906 F. Supp. 2d 178, 186 (W.D.N.Y. 2012) (employee could not establish causal nexus between his protected activity and issuance of a "Last Chance Agreement" where the agreement was the end result of a course of progressive discipline beginning before the protected activity).

Beginning with Plaintiff's assessment in October 2020, Roche was clear that his documentation of work orders and his completion of tasks in a timely manner were areas that required improvement. (SUF ¶¶ 69-70.) When Plaintiff failed to show improvement, Roche drafted an associate counseling report in December 2020. (SUF ¶72.) Instead of issuing the associate counseling report, Roche gave Plaintiff the opportunity to improve under the supervision of Shaffer. (SUF ¶ 73.) But those efforts proved fruitless. (SUF ¶ 92.) Pasquarello's failures continued into 2021 leading to the events of May 2021, where Plaintiff's negligence put the Hospital at-risk and caused its insurer to find it deficient. (SUF ¶¶ 85-87.) The undisputed facts further show that Roche expressed his dissatisfaction with Plaintiff's work efforts on May 10, 2021, and then again in a meeting with Plaintiff on May 25, 2021. (SUF ¶¶ 90-92.) Plaintiff filed his complaint to Human Resources on May 26, 2021, only a day after it became clear disciplinary action may be on the horizon. (SUF ¶ 94.) Plaintiff's allegations of discrimination were investigated and were unsubstantiated by Human Resources. (SUF ¶ 96.) Only after investigating Plaintiff's claims did Human Resources give Roche the authority to issue Plaintiff a counseling and PIP on June 10, 2021. (SUF ¶¶ 104-05, 98-99.)

Plaintiff failed to meet the requirements of the PIP throughout June and July 2021 and was issued another counseling report on July 19, 2021. (SUF ¶¶ 102.) Again, Pasquarello alleged that the associate counseling report was retaliatory and discriminatory, and he filed a complaint with Human Resources on July 30, 2021. Human Resources once again investigated Plaintiff's claims and found them to be baseless. (SUF ¶¶ 107.).

It is abundantly clear that the process of issuing Plaintiff progressive discipline began as early as October 2020. (SUF ¶¶ 69-70.) Plaintiff was informed of his deficiencies involving documentation *seven months* before he received his PIP and associate counsel report. (*Id.*)

Plaintiff's refusal to correct those issues caused his performance-improvement plan. Pasquarello was not subject to retaliation any way. His attempt to transform legitimate work-related – and predictable – disciplinary counselings into retaliation is just another example of his refusal to take accountability for his actions. Defendants should be granted summary judgment of these claims because there is no genuine issue of material fact concerning how and when the counseling and PIP were issued.

## VI. PLAINTIFF CANNOT ESTABLISH THAT HE WAS SUBJECT TO PAY DISPARITIES BASED ON HIS AGE

Plaintiff claims that he was paid at a different salary than other younger assistant directors in violation of the New York State Equal Pay Act ("NYSEPA"). This claim fails because Pasquarello was paid a higher initial salary than his younger predecessor and any difference in salary between Pasquarello and any other assistant director is based on differences in job responsibilities and tenure with Crothall. Under the NYSEPA, differences in pay are justified by differences in "skill, effort and responsibility" and seniority. NYLL § 194. The NYSEPA is analyzed under the same standards applicable to the Federal Equal Pay Act. *Lehman v. Bergmann Assocs., Inc.*, 11 F. Supp. 3d 408, 420 n.6 (W.D.N.Y. 2014). Thus, to prove discrimination under the NYSEPA, a plaintiff must show that (i) the employer pays different wages to employees of the outside of their class; (ii) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (iii) the jobs are performed under similar working conditions. *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 470 (S.D.N.Y. 2013) (citing *Lavin–McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir.2001)).

Plaintiff was not subject to an equal pay violation. Crothall has a well-established policy of providing individuals with annual salary adjustments based on their roles and tenure with Crothall on top of the base salary for their position. (SUF ¶ 46.) Pasquarello's initially salary when

hired for the position of Assistant Director of Fire Safety was higher than his predecessor in the role (Bond) who is almost two decades younger than him despite Bond's longer tenure with Crothall. The other assistant directors that Pasquarello compares himself to were with Crothall for at least two years before his hire and preformed radically different jobs. (*Id*.) Barton, who earned more than Plaintiff, began his career with Crothall 13 years before Plaintiff. As Plant Director he was expected to use his 40 years of experience in plant operations and engineering to protect the Hospital. (*Id*.) To that end, he holds licenses Refrigeration and Boiler Operations. (*Id*.) Pasquarello did not have this experience nor did he have this responsibility.

There is simply no evidence that Pasquarello was discriminated against concerning his wages in any capacity and his NYSEPA claim should be dismissed for that reason.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment should be granted and the Complaint should be dismissed in its entirety.

Dated: October 4, 2022
      New York, New York                   LITTLER MENDELSON P.C.

                                  By*: /s/ Shawn Matthew Clark*
                                      Shawn Matthew Clark
                                      Zack G. Sharpe, IV
                                      900 Third Avenue
                                      New York, NY 10022.3298
                                      Telephone: 212.583.9600
                                      smclark@littler.com
                                      zsharpe@littler.com

                                      *Attorneys for Defendant*