UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH PASQUARELLO,<br><br>     Plaintiff,<br><br>     v.<br><br>CROTHALL HEALTHCARE, INC., MICHAEL ROCHE<br><br>     Defendant. | No. 21-cv-08732 (JMF)<br><br>**DECLARATION OF MICHAEL ROCHE** |

**Michael Roche** hereby declares as follows under the penalties of perjury:

1. I am the Senior Director of Engineering and a Regional Director of Operations for Defendant Crothall Healthcare Inc., based at the Mt. Sinai Hospital. I am also an individually named defendant. I submit this declaration in support of Defendant's motion for summary judgment seeking to dismiss the Complaint of Plaintiff Joseph Pasquarello. The facts in this declaration are based on my personal knowledge or from the books and records of my employer Crothall Healthcare, Inc. ("Crothall").

**I. BACKGROUND**

2. Crothall is a leading healthcare support services provider. It provides support to hospitals and health systems across the country in seven core areas.

3. These core areas include environmental services, healthcare technology solutions, patient transportation, facilities management, ambulatory services, sterile processing, and laundry services.

4. Mount Sinai Health System is a healthcare network in New York City and a Crothall client.

5.      Mount Sinai Health System's main campus (the "Hospital") is located in New York, New York.

6.      I began working for Crothall as an Operating Manager at the Hospital in September 2013. In May 2015, I was promoted to Director of Engineering for Mt. Sinai's School of Medicine. In February 2018, I was promoted to Director of Engineering for Mt. Sinai Hospital, In April 2018, I was promoted to Senior Director of Engineering/Resident Regional Manager. In April 2022, I was promoted to Regional Director of Operations for the Mount Sinai Health System, my current role.

7.      In my current role, I am responsible for all aspects of Engineering, Plant Operations, Project Management and Fire Safety; oversight of approximately ten million square feet and one hundred-thirty million dollar year annual operational budget with a $60 million capital budget all rolling up through seven hospitals – Mount Sinai Hospital, Mount Sinai Queens, Mount Sinai Morningside, Mount Sinai West, Mount Sinai Beth Israel, New York Eye & Ear, Mount Sinai Brooklyn. This includes responsibility for approximately 320+ union employees, and approximately 75+ Crothall employees..

8.      I also supervise the Fire Safety Department at the Hospital which is staffed by two to three mangers employed by Crothall, and a 15-20 fire marshals employed directly by the Hospital.

9.      I directly interview or give my approval for every individual hired into the Fire Safety Department.

## II.    THE HOSPITAL'S FIRE SAFETY DEPARTMENT

10.     Crothall began providing management services for the Hospital including its fire safety management services, in 2013. At that time, a single individual– Robert Shaffer – managed the entire Fire Safety Department.

11. Shaffer is a Crothall director who currently serves as the Systems Director of Fire Safety for the Mt. Sinai Health System.

12. In 2014, William Vanwart was hired to work under Shaffer's supervision. Vanwart was over 40 years old at his time of hire.

13. Soon after, in or around 2015, the department made two other junior hires – Mark Matthews (Fire Safety Manager and Matthew Bond (Fire Safety Supervisor).

14. Vanwart resigned in 2016. The position of Director of Fire Safety was reclassed down to Assistant Director based on the limited healthcare experience of the candidates. Rafael Perez was hired by Jason Curley Senior Director of Engineering as Fire Safety Compliance Manager in March 2017 to work alongside of Matthews who was promoted to Assistant Director.

15. Matthews resigned in September 2017, and Bond was promoted to Assistant Director by Curley. Bond and Perez reported directly to Curley at that time.

16. Curley resigned in April 2018, and I was promoted to the role of Resident Regional Manager. At that point, Bond and Perez reported directly to me.

17. I terminated Perez in December 2018 for not meeting Crothall's standards.

18. I interviewed and hired Joseph Jurain in March 2019 to replace Perez. The position was reclassed to Fire Safety Supervisor based on Jurain's experience. He was over 40 years old at the time I hired him.

19. Bond began his career with Crothall as an intern in 2014, and had been promoted several times before becoming the Assistant Director of Fire Safety.

20. As Assistant Director of Fire Safety, Bond was responsible for:

- Overseeing programs for fire alarm & fire suppression testing and life safety preventative measures;

- Overseeing maintenance of fire alarm and fire suppression systems;

- Carrying out and supervising the implementation of interim live-saving measures (ILSM) in response to system deficiencies and construction;

- Performing audits to ensure full life safety and fire safety compliance with joint commission standards and all AHJ's;

- Overseeing and participating in programs for reviewing construction projects to ensure fire safety compliance;

- Overseeing fire drill and in-service training programs for Hospital employees.

- Implementing and managing building fire safety plans;

- Manage programs for FDNY lab inspections and all laboratory life safety and fire safety compliance programs;

- Maintain public assembly compliance and permitting; and

- Oversee programs for fire stopping and corrective work for life safety deficiencies.

*See* Exhibit A (the Assistant Director of Fire Safety Job Description) that is attached to this declaration.

21. Unfortunately, Bond in his new role as Assistant Director of Fire Safety (and the rest of the Fire Safety Department) did not meet my expectations. Various tasks were not being performed promptly.

22. Then, in September 2019, I demoted Bond to Fire Safety Supervisor based on his poor performance in leading the Fire Safety Department.

**III.    PASQUARELLO'S HIRE AND TRAINING**

23.    The position of Assistant Director of Fire Safety remained vacant until I hired Joseph Pasquarello on October 21, 2019. He assumed the position on November 2, 2019.

24.    Generally, Crothall Fire Safety Department managers, supervisors, and directors undergo a group training program called "Foundations" after they are hired. The Foundations program teaches managers and senior leadership on how the Fire Safety Department is supposed to be run.

25.    Participants in the foundations program are taught how the Fire Safety Department is run from an engineering standpoint and how to use the department's systems, including TeamOps, a program that Crothall's Fire Safety Department uses to track its work orders, and TeamDocs, a platform that houses all of the Fire Safety Department's documents and records. There are typically two sessions held per year, and efforts are made to ensure that associates undergo this training within their first year of employment based on availability.

26.    However, the Foundations training program was halted during the COVID-19 pandemic because employees could not gather in a conference room setting. Thus, Pasquarello, who was hired just months before the onset of COVID-19, could not attend Foundations and received individual training from members of the Fire Safety Department, including, Shaffer, Bond, and from me.

**IV.    UNDER-PERFORMANCE BY THE FIRE SAFETY DEPARTMENT UNDER PASQUARELLO'S LEADERSHIP**

27.    Under Pasquarello's leadership, the Fire Safety Department struggled to meet deadlines and documentation duties. But Pasquarello did not accept responsibility for the failures

of his team. Instead, he attributed the departmental issues to his subordinates Bond and Jurain, to whom he placed on a performance-improvement-plan ("PIP").

28. Jurain transferred to Mt. Sinai's Queens Hospital, a much smaller campus, in mid-2020, and Bond transferred to a position in the Engineering Department in January 2021. But the problems within the Fire Safety Department continued after their departures.

29. The Fire Safety Department hired replacements for Bond and Jurain (Ron Kanterman – who was over 40 years old and Omelfi Garcia), but both left after serving in the department and reporting to Pasquarello for less than a year.

V. **PASQUARELLO'S INDIVIDUAL POOR PERFORMANCE**

30. On November 26, 2019, the Fire Safety Department was given approval to install a delayed door at one of the facilities it managed. Bond, Pasquarello, Assistant Director Douglas Rome, Assistant Director Robert Denver, and I were all included on an email chain informing the department of its authority to begin installation of the delayed door.

31. Delayed doors are specifically designed to prevent a door from opening immediately when an individual tries to exit under normal circumstances to prevent unauthorized exits or entrances. The door is designed to allow east exit in emergency situations.

32. I immediately requested that an installation of the delayed door be commenced. It was Pasquarello's responsibility to ensure that the project was completed because he was responsible for the maintenance of fire doors, and understood that the project involved the installation of such doors.

33. Months passed with no action by Pasquarello. On February 10, 2020, Denver followed up with Bond and Pasquarello to determine whether the delayed door installation had been completed. It had not been.

34. Pasquarello did not complete the installation as I had ordered because he personally deemed it unnecessary.

35. On different occasions during his employment, Pasquarello requested a television so that he could observe civil unrest and a large monitor to display work assignments, which I did not deem relevant to his job performance but I encouraged him to draft formal proposals for review and approval. It is standard Crothall practice for every purchase of equipment be formally approved, which he understood as Assistant Director but he failed to produce a credible proposal.

36. I did not approve any televisions or large monitors for any of my direct reports, and any television monitors within their offices were usually taken from a department that sought to discard them.

37. On September 25, 2020, I again ordered Pasquarello to have the delayed doors installed. I gave him a deadline of October 16, 2020, but he failed to keep track of whether the delayed doors were ever installed. Failing to keep track of whether the doors were installed put Crothall in violation of what Mt. Sinai had requested and opened up the Hospital to potential safety hazards.

38. On October 29, 2020, I provided Pasquarello with a written job performance assessment. A copy of the written job performance assessment is attached to this declaration as Exhibit B.

39. I advised Pasquarello in job performance assessment that he needed "to get more in to the weeds on some issues . . . focus on details and ask follow-up questions." See Exhibit B. I explained that Pasquarello "regularly does not have a good understanding of all of the information required to accomplish [a] task." *See id.*

40. Most importantly, I wrote in the job performance assessment that Pasquarello's " "[t]ime management need[ed] to be improved," that he continued to close preventative measures on the last day of the month, and that he was failing to complete his interim life-saving measure reviews in a timely manner. *See id.* I pointed out that during the annual 2020 audit "there were a number of missing documents which required the department to scramble to get everything in line." *See id.*

41. Also during that time, Pasquarello missed a scheduled fire drill in the 1184 Fifth Ave building. He failed to schedule this drill and also missed the 10 day grace period. This is considered a conditional level finding, the most severe type. This was missed due to Pasquarello's negligence.

42. Based on these deficiencies, I committed to meeting with Pasquarello weekly to discuss ongoing matters in the Fire Safety Department and the status of projects and documentation.

43. Despite my weekly meetings with Pasquarello, his performance did not improve. On December 9, 2020, I began drafting a formal associate counseling report ("counseling") for Pasquarello.

44. Around that same time, I spoke with Robert Shaffer – Crothall's System Director – and expressed my displeasure with Pasquarello's work product and my intention to write a counseling. Shaffer understood the issues and volunteered to take a more hands-on role in helping Pasquarello to improve. Based on Shaffer's commitment to work with Pasquarello, I withdrew my counseling, hoping to see improvement in Pasquarello's performance and eliminating the need to discipline Pasquarello. Unfortunately, the improvement I hoped for did not follow.

45. The Hospital is subject to an audit by The Joint Commission, a nationwide healthcare accrediting agency, which assesses all parts of the hospital to ensure safety and compliance with regulations and then issues a report summarizing its findings. Failure to meet Joint Commission standards could result in a hospital's loss of accreditation.

46. While Fire Safety composes less than 10 percent of the audit, preparing the Department for the audit requires an all-hands-on deck approach involving multiple employees across different departments.

47. But in the months leading up to the Joint Commission audit, Pasquarello failed to sufficiently document work orders including whether improperly working doors were fixed. This meant the Hospital could not establish, during the audit, whether necessary work was completed up to standards.

48. Due to Pasquarello's failure, we hired an outside vendor to complete the work orders, and to ensure that the doors were working properly.

49. As Assistant Fire Safety Director, Pasquarello was ultimately responsible for scheduling the testing, which an outside vendor performed.

50. The issues with Pasquarello's performance continued. On May 10, 2021, Pasquarello failed to provide required notice to Crothall's insurance provider – FM Global Risk Management ("FM Global") – of an impairment to a fire pump that services 5 Hospital buildings. FM Global saw the defective pump while on an unrelated site visit to the facility, and recorded the deficiency, which put the Hospital at risk of having its insurance premium increased.

51. Pasquarello also failed to document and track repairs and life safety deficiencies. In particular, he failed to document whether an annual fire door inspection had been completed.

52. I met with Pasquarello on May 10, 2021 and questioned him about his failure to alert FM Global. Pasquarello did not accept responsibility and instead blamed the failure on his subordinates.

53. At Pasquarello's request, we had a meeting on May 25, 2021 to discuss his work performance and shortcomings. I made it clear that his job performance needed substantial improvement and that he was not meeting expectations.

54. I began to draft a performance improvement plan and disciplinary counseling for Pasquarello.

55. The very next day, Pasquarello wrote a letter to Patricia Lazarazo, Crothall's Human Resources Manager stating his belief that I was discriminating against him because of his age. I was not.

56. Human Resources investigated Pasquarello's allegations, and instructed me to pause my plan to issue Pasquarello a performance improvement plan and disciplinary counseling while the investigation was ongoing.

57. On June 4, 2021, Human Resources concluded its investigation into Pasquarello's allegations, finding that I had not discriminated against him.

58. I requested permission from Human Resource to move forward with counseling and issuing a performance improvement plan to Pasquarello.

59. I received the authority to issue the performance improvement plan to Pasquarello on June 9, 2021, and I issued the counseling and performance improvement plan to Pasquarello on June 10, 2021. The performance improvement plan required Pasquarello to meet the following standards:

- Timely completion and closing of all preventative maintenance tasks completed by a vendor or in house Fire Safety staff.

- Attend all required meetings or let the organizer know that you will not attend at least one hour in advance of the scheduled start time.

- Obtain all required certificates of fitness required for Fire Marshals (except Z-89/F-89).

- To obtain his F-89 that he was told to acquire at the start of his employment in October 2019 and his annual review in 2020.

- Ensure all regulatory documentation for the previous month is received, reviewed and uploaded to TeamDocs by the 10th of the current month.

- Ensure life safety work orders are created for all life safety deficiencies by the next business day per your current procedure.

- Ensure all urgent impact ILSM are completed properly and closed out in TeamOps within 24 hours.

*See* Exhibit C to this declaration (a copy of the performance improvement plan and counseling I issued to Pasquarello).

60. I continued to meet regularly with Pasquarello to discuss areas where improvement was required, but he continued to fall short of my expectations. Thus, I issued a second counseling to Pasquarello on July 19, 2021, after he failed to meet multiple requirements of his improvement plan.

61. Pasquarello failed to close out work order #503212 by the required timeframe. *See* Exhibit D.

62. In addition, he failed to implement an interim life safety measure (ILSM)—a process by which the fire safety team identifies the measures required to be taken if a fire emergency occurs if a particular function, such as a door, failed. *See id.*

63. It was Pasquarello's responsibility to assess what measures would need to be taken and provide a determination. ILSM are meant to protect the health and safety of every individual

at the facility by creating emergency contingencies – it is a core duty of the Fire Safety Department. Pasquarello's failure to implement the ILSM placed Crothall and Mt. Sinai in violation of fire safety codes and subject to legal liability.

64. Pasquarello wrote to Human Resources alleging that the counseling I issued to him on July 19, 2021 was retaliatory. Human Resources opened an investigation into Pasquarello's claims but found that the counseling was appropriate and that I had not retaliated against him.

## VI. CROTHALL HIRES A FIRE SAFETY DIRECTOR TO BETTER MANAGE THE MISMANAGED DEPARTMENT

65. Given Pasquarello's struggles and the issues in the Fire Safety Department as a whole, I along with Shaffer and my supervisor, Chris Hariegel, decided that Crothall needed a Director of Fire Safety.

66. I informed Pasquarello of this decision and we publicly posted the position, and Bernie Nunez, the Assistant Director of Fire Safety as Mt. Sinai's Beth Israel campus, applied.

67. Based on his experience and solid performance at Beth Israel we hired Nunez on July 18, 2021 to be the Director of Fire Safety.

## VII. THE CLOSURE OF PASQUARELLO'S PERFORMANCE IMPROVEMENT PLAN

68. On September 20, 2021, I finalized Pasquarello's performance improvement plan assessment, evaluating whether he met the goals of his performance improvement plan. I wrote that during the month of June, Pasquarello failed to timely complete and close all preventative maintenance tasks completed by a vendor or in house Fire Safety staff, which resulted in a second progressive counseling. See Exhibit E (September 20, 2021 Memorandum "Re: Completion of Performance Improvement Plan).

69. I also wrote that Pasquarello struggled to ensure all regulatory documentation for August was received, reviewed, and uploaded by September 10, 2021, and stated that Pasquarello failed to ensure all urgent impact ILSM were completed properly and closed out in TeamOps within 24 hours during the month of June. *See id.*

70. Despite these critiques, I had no intention of terminating Pasquarello. In fact, I closed his performance improvement plan, confirming that he had satisfactorily meet some aspects of the plan and outlining other areas where he would need to work to continue improving. *See id.*

71. I expected to continue working with Pasquarello and hoped that he would improve, but I never got the chance.

72. Pasquarello voluntarily resigned his employment on September 21, 2021 and failed to leave any notice.

### VIII. SALARIES AT CROTHALL

73. Every position at Crothall has a prescribed salary range which is set by corporate human resources based on the job responsibilities and requirements.

74. Within those ranges, salaries are awarded to individuals based on their experience and tenure with the company.

75. At the time of his promotion to Assistant Director of Fire Safety, Matthew Bond earned an annual salary of $112,000. As of that promotion, he had been with Crothall in varying positions of increasing authority for over 3 years and had continuously shown a clear ability for advancement and to take on more. Following his demotion to Fire Safety Supervisor, Bond's salary was reduced to $104,000.

76. Pasquarello's salary upon his hire was $112,500 plus a $4,200 after tax package for parking plus bonus, putting his total compensation over $117,000 dollars. Pasquarello had no prior experience at Crothall, and under two years of experience working in a hospital Fire Safety

Department before joining Crothall. His experience as a firefighter was helpful but not directly related to the Assistant Director of Fire Safety position, he held at Crothall. Indeed, it was not his responsibility to put out fires at the Hospital.

77.     My direct reports outside of fire safety, were Douglas Rome – Assistant Director Hospital, Robert Denver – Assistant Director Hospital, Ryan Nowicki – Director School of Medicine, John Barton – Plant Director, James Coyle – Director of Infrastructure, and Jeanine Lai – Finance Manager. Nowicki is an engineer with over 10 years of experience in engineering. Barton has over 40 years of experience in plant operations and engineering and holds CHFM, CEM, Refrigeration and Boiler Operator licenses. Denver has a degree in engineering. Coyle has a degree in engineering and over 25 years of experience in engineering. Rome has a degree in engineering and CHFM, CEM and Refrigeration licenses. Lai has over 30 years of experience in financial accounting. Their salaries as of December 31, 2019 were as follows:

| Name | Title | Annual Salary | Tenure (12/31/19) |
|---|---|---|---|
| Ryan Nowicki | Director | $154, 500 | 5 years |
| John Barton | Director | $212, 581.88 | 13 years |
| Robert Denver | Assistant Director | $ 115, 976.25 | 3 years |
| James Coyle | Director | $177, 225.17 | 2 years |
| Douglas Rome | Assistant Director | $ 115, 908.75 | 3 years |
| Jeanine Lai | Assistant Director | $ 125, 817.53 | 4 years |

I declare under penalty of perjury that the laws of the United States that the foregoing is true and correct.

Executed on September 30, 2022