UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH PASQUARELLO,<br><br>                Plaintiff,<br><br>              v.<br><br>CROTHALL HEALTHCARE, INC., MICHAEL ROCHE<br><br>                Defendant. | No. 21-cv-08732 (JMF)<br><br>**DECLARATION OF ROBERT SHAFFER** |

**ROBERT SHAFFER,** hereby declares as follows under the penalties of perjury:

1.      I am employed as the Systems Director of Fire Safety for Crothall Healthcare, Inc. ("Crothall") and the Mount Sinai Health System. I submit this declaration in support of Defendant's motion for summary judgment seeking to dismiss the Complaint of Plaintiff Joseph Pasquarello. The facts in this declaration are based on my personal knowledge or Crothall's books and records.

2.      I am currently 71 years old, and was 62 years old when Crothall began providing management services to Mt. Sinai Health System in 2013.

3.      Throughout most of 2013, I individually managed the Fire Safety Department at Mt. Sinai Hospital (the "Hospital")—the largest Hospital within the Mt. Sinai Health System..

4.      In July 2013, Crothall hired William VanWart to work as a Fire Safety Supervisor under my supervision. VanWart was 56 years old at his time of hire.

5.      In 2015, Crothall restructured its management groups and I transitioned to the position of Systems Director where I oversee all of Mt. Sinai Healthcare System's campuses, including the Hospital. Following my transition, VanWart was promoted to replace me as Director of Fire Safety.

6. To support VanWart, Crothall made two hires in 2015 – Mark Matthews and Matthew Bond.

7. Mark Matthews was hired as a Fire Safety Manager. The duties of a Fire Safety Manager include:

- Understanding and implementing Mt. Sinai fire & life safety policies,
- Implementing and managing building fire safety plans,
- Performing ILSM assessments and document preparation,
- Managing and implementing the hot works program,
- Managing and reviewing above ceiling permits,
- Managing fire stopping program,
- Managing and implementing the clear corridor program,
- Participating in event walk-throughs to ensure life safety compliance,
- Managing and reviewing lab inspections and required follow-up for corrective work,
- Maintaining all documentation of programs of responsibility,
- Performing necessary audits to ensure full compliance with the Joint Commission Standards and all governing agencies,
- Performing all manager responsibilities as requested by the Fire Safety Assistant Director,
- Participating in hospital management and safety meetings,
- Assisting in the mitigation of violations and fines,
- Managing fire marshal staff to include, but not limited to (if applicable):
  - Shift staffing level and weekly payroll submissions,
  - Managing and implementing fire drill program

- o Managing and implementing in-service training program
- o Managing and implementing preventive maintenance programs, Managing and reviewing all fire marshal daily reports and occurrence reports.

Ex. A.

8. Matthew Bond was hired as Fire Safety Supervisor. I had familiarity with Mr. Bond who began his employment with Crothall in June 2014 as hourly fire safety intern.

9. The duties of a Fire Safety Supervisor include:

- Understanding and implementing Mt. Sinai fire & life safety policies,
- Implementing and managing building fire safety plans,
- Performing ILSM assessments and document preparation,
- Managing and implementing the hot works program,
- Managing and reviewing above ceiling permits,
- Managing fire stopping program,
- Managing and implementing the clear corridor program,
- Participating in event walk-throughs to ensure life safety compliance,
- Managing and reviewing lab inspections and required follow-up for corrective work,
- Managing fire marshal staff to include, but not limited to (if applicable):
  - o Shift staffing level and weekly payroll submissions,
  - o Managing and implementing fire drill program
  - o Managing and implementing in-service training program

- o Managing and implementing preventive maintenance programs, Managing and reviewing all fire marshal daily reports and occurrence reports.

Ex. B.

10. Matthews resigned from Crothall in 2017, and was replaced by Rafael Perez as Fire Safety Compliance Manager, but Perez was subsequently terminated for his inability to perform his job duties.

11. Later in 2017, Crothall promoted Bond to the position of Assistant Fire Safety Director.

12. The job description for the Assistant Fire Safety Director states the individual in this role must:

- Oversee programs for fire alarm & fire suppression testing and life safety preventative measures.
- Oversee maintenance of fire alarm and fire suppression systems.
- Carry out and supervise the implementation of interim live-saving measures (ILSM) in response to system deficiencies and construction.
- Perform audits and ensure full life safety and fire safety compliance with joint commission standards and all AHJ's.
- Oversee and participate in programs for reviewing construction projects to ensure compliance.
- Oversee fire drill and in-service training programs.
- Implement and manage building Fire Safety Plans.

- Manage programs for FDNY lab inspections and all laboratory life safety and fire safety compliance programs.
- Maintain public assembly compliance and permitting.
- Oversee programs for fire stopping and corrective work for life safety deficiencies. (Roche Decl. Ex. A.)

13. Unfortunately, Bond did not meet the expectation of this role, and his direct supervisor, Michael Roche, Senior Director of Engineering at the Hospital, demoted him back to Fire Safety Supervisor in 2019.

14. In fall 2019, I interviewed Pasquarello for the position of Assistant Direct of Fire Safety, which was then vacated following Bond's demotion. I believed that Pasquarello's background in fire safety, including as a firefighter and a fire marshal, would make him a good candidate for the position, but I understood that he would have to learn Crothall's systems, and that he had limited experience working in fire safety in a hospital setting.

15. I reported my feedback to Roche, who made the decision to hire Pasquarello after interviewing Pasquarello himself.

16. In his new role as Assistant Director of Fire Safety, Pasquarello had two direct reports –Bond and Joseph Jurain.

17. In December 2020, I had a conversation with Roche, where he expressed frustration with Pasquarello's work. Specifically, he expressed frustration with Pasquarello's poor documentation and untimely closing of work orders. e, Roche told me that he planned to issue Pasquarello a disciplinary counseling based on Pasquarello's poor performance, but I persuaded Roche to give me time to take Pasquarello under my wing and train him directly, hoping to improve his work.

18. I trained Pasquarello on two programs the Fire Safety Department uses regularly (TeamDocs and TeamOps) after he told me, to my great surprise, that he did not use the programs very often.

19. Pasquarello should have known how to use TeamOps and TeamDocs by that point because he had been working for Crothall for over a year, but he claimed to have his own system.

20. According to Pasquarello, Bond (Pasquarello's subordinate) was responsible for understanding and using TeamDocs and TeamOps, and that is was not his duty to become an expert on the software as his supervisor. He perceived his role to primarily be one of delegation. But Pasquarello was wrong. He needed to use those programs to find, track, and review work orders and documentation evidencing fire safety compliance—a key component of his job as the senior most employee in the Fire Safety Department at the Hospital, and a key component of the Hospital's compliance programs necessary for audits and accreditation.

21. By February 2021, it became apparent to me that Pasquarello simply did not understand his role or attempt to meet the expectations that Roche and I set for him.

22. Indeed, despite my attempts to train Pasquarello I learned that he was still failing to properly create work orders for failed life safety systems, and that in one instance his failure to create work orders for failures of an annual door inspection required the Fire Safety Department to repeat the inspection, which cost the Hospital $35,000 dollars.

23. Specifically, Pasquarello did not follow the Crothall procedures for documenting failed life safety devices. This procedure is a necessary requirement for complying with Hospital policy, New York City fire safety regulations and the Hospital's accrediting agency – The Joint Commission, which could affect the Hospital's Medicare funding.

24. As Assistant Fire Safety Director, Pasquarello was ultimately responsible for ensuring that this testing took place, but he placed the blame on the subordinates he was in charge of supervising.

25. This did not surprise me because my own experience with Pasquarello demonstrated that he always believed that he knew better, and that he was resistant to following directions. Based on his experience, Pasquarello considered himself a subject matter expert and authority beyond reproach and that he could reject Crothall's procedures if they did not suit his own methods.

26. Pasquarello failed to accept that his experience as a firefighter did not directly translate to the document-intensive and administrative duties of an Assistant Director of Fire Safety.

27. Rather than take responsibility for his shortcomings, Pasquarello expressed to me that he was being singled out because of his age, but investigations into those allegations determined that. Roche's criticism into Pasquarello's work product were substantiated. And I saw no evidence of any age-based discrimination by Roche, or anybody else at Crothall or the Hospital.

28. This confirmed my own experiences with Roche, who is a fair, but performance-oriented manager.

29. Roche's critiques of Pasquarello's work performance were fair. I personally observed that at one point Pasquarello had 300 open work orders and hundreds of unread emails. After initially giving Pasquarello the benefit of the doubt, it was clear to me that Roche's critiques were accurate, and I agreed with the decision to issue counseling's and a performance improvement plan to Pasquarello.

30. Despite, Pasquarello's claims that there was a "club atmosphere" at Crothall that he was not a part of, the only clubs that I recognized were people who did their work and those who did not. Pasquarello was in the latter category.

Executed on September 29, 2022

_____
Robert Shaffer