UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH PASQUARELLO,<br><br>                Plaintiff,<br><br>      v.<br><br>CROTHALL HEALTHCARE, INC., MICHAEL ROCHE<br><br>                Defendant. | No. 21-cv-08732 (JLR) |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

LITTLER MENDELSON, P.C.
900 Third Avenue
New York, New York 10022

*Attorneys for Defendants*

**PRELIMINARY STATEMENT**

Defendants Crothall Healthcare Inc., and Michael Roche hired Plaintiff with full knowledge of the fact that he was over the age of 40, expecting he could grow into his role as Assistant Director of Fire Safety. And while the Fire Safety Department may have involved more time and effort than Plaintiff anticipated, he was not treated any differently than any other employee in his position. There is simply no evidence in the record to suggest that Mr. Pasquarello was subject to age discrimination, retaliation, constructive discharge, or any other unlawful activity.

Without supporting facts, Plaintiff tries to manufacture factual disputes through conclusory statements, half-truths, decontextualized facts, baseless allegations, and otherwise irrelevant information. (*See, e.g.*, CMF ¶¶ 25, 114-137.) But the genuine material facts are clear and undisputed: Plaintiff was hired by Mr. Roche when he was 53 years old, he was alerted to areas requiring improvement as early as his first performance assessment in October 2020, he failed to show improvement leading to a performance-improvement plan ("PIP") beginning in June 2021, and when he complained to Human Resources about the circumstances of the PIP – his claims were investigated and found to be unsubstantiated. (CMF ¶¶ 60, 96-98, 101, 106-107.) Four months after being placed on the PIP, Plaintiff resigned from his employment. (CMF ¶ 113.) Plaintiff has failed to submit any material facts that would lead one to believe these actions were discriminatory or that he was constructively discharged.

Plaintiff misconstrues his disagreement with how Crothall operate its facilities, staffs its departments and evaluates its assistant directors as genuine issues of material facts. But his subjective disagreement does not equal discriminatory or otherwise unlawful activity. For these

1

reasons, and those set forth more fully in Defendants' opening memorandum of law, Defendants request that the Court grant their motion and dismissed this case in its entirety.

## ARGUMENT

**A. Defendants Have Shown That Plaintiff Was Not Compensated at Lower Rate Than His Only Comparator**

Defendants' Motion for Summary Judgment ("Defs.' Br.") is clear that Matthew Bond was Plaintiff's only true comparator. (Defs' Br. 13-15.) Mr. Bond immediately preceded Plaintiff as Assistant Director and shared the same duties and responsibilities. (*Id.* at 14.) Plaintiff seeks to escape this reality by taking a kitchen sink approach of comparing himself to directors and assistant directors employed throughout Defendants' various departments. (*Id.*) These individuals did not share duties, tenure, credentials, or responsibilities with Plaintiff. (*Id.*) All of these categories factor into how Crothall determines an employee's salary. (Defs.' Br. 22.)

In fact, as Assistant Director of Fire Safety, Plaintiff was paid at a *higher* base salary than his immediate predecessor Bond. (Defs. Br. 3-4.) Plaintiff tries to sidestep this fact by acknowledging Plaintiff's base salary as stated on his offer letter, but ignoring Bond's base salary in *his* offer letter. CMF ¶¶ 19, 26.) Instead, Plaintiff redirects the Court to a snapshot of Bond's bi-weekly pay statements in 2018, which incorporate additional pay Bond may have received based on tenure. (CMF ¶ 26.) Noticeably, Plaintiff does not compare Bond's pay statements with his own—those would show that Plaintiff earned more. Thus, the facts establish that Plaintiff was not subject to any discriminatory pay practices. To overcome these incontrovertible facts, Plaintiff seeks to compare himself to Mr. Nunez, who was a Director and his supervisor. (SUF ¶ 30.)

In opposition, Plaintiff argues incorrectly that because Defendants did not engage in a painstaking comparison between Plaintiff and Mr. Nunez – despite stating and establishing that Mr. Bond was Plaintiff's only comparator – that summary judgment on Plaintiff's equal pay claims

is waived. (Pl.'s Br. 12.) But "a moving party need not negate the non-moving party's position, he simply has to note the lack of evidence supporting the non-moving party's claim." *Brown v. McClellan*, No. 93-CV-0901E(F), 1996 WL 328209, at *1 (W.D.N.Y. June 11, 1996). By contrast, the party opposing the motion "must present competent evidence showing that there is a genuine issue for trial – the 'mere existence of a scintilla of evidence' supporting the non-movant's case is insufficient to defeat a motion for summary judgment." *Id.* There must be evidence on which the jury could reasonably find for such party. *Id.*

Defendants established throughout their Motion that Plaintiff's only appropriate comparator is Mr. Bond. (Defs' Br. 13-15.) Pasquarello's self-admitted supervisor (Comp. ¶ 83) cannot be his comparator and Defendants need not explore the matter further. *Shaw v. McHugh*, No. 12-CV-6834 CS, 2015 WL 1400069, at *9 (S.D.N.Y. Mar. 26, 2015), *aff'd,* 641 F. App'x 95 (2d Cir. 2016) (supervisors are rarely considered materially similar to supervisees); *Hesse v. Dolgencorp of N.Y., Inc.,* No. 10–CV–421, 2014 WL 1315337, at *21 (W.D.N.Y. Mar. 31, 2014) (plaintiff cannot be similarly situated to her superior); *Hernandez v. City of N.Y.,* No. 11–CV–3521, 2013 WL 593450, at *4 (E.D.N.Y. Feb. 13, 2013) ("Examples of what constitutes [similarly situated in] a 'material respect' are holding the same positions of roughly the same rank, and being subject to the same performance review and disciplinary standards."); *Wood v. Sophie Davis Sch.,* No. 02–CV–7781, 2003 WL 22966288, at *6 (S.D.N.Y. Dec. 15, 2003) (plaintiff's purported comparators not similarly situated because they were "actually all her supervisors"); *Ortiz v. Brookstone Co.,* 274 F. Supp. 2d 456, 463–64 (S.D.N.Y. 2003) (fact that plaintiff's comparator was a direct supervisor, among other factors, led to conclusion they were not similarly situated).

Plaintiff nevertheless argues that Defendants' Motion for Summary Judgment is waived as it pertains to Mr. Nunez based on two cases irrelevant to the facts. (Pl.'s Br. 12.) In *Nick's Garage, Inc. v. Progressive Cas. Ins. Co*., 875 F.3d 107 (2d Cir. 2017), the court held that defendants may show that they are entitled to summary judgment either by negating an essential element of a plaintiff's claim *or* by showing the insufficiency of Plaintiff's own evidence. *Id.* at 114–16. The defendants in *Nick's Garage* stated that the plaintiff produced no evidence to support their claims but did not pinpoint any specific gaps in the record. That is not the case here; Defendants have shown that Plaintiff is unlike the individuals he seeks to compare himself to except for Mr. Bond who received a lower salary. (Defs.' Br. 3-4.) By identifying the difference in tenure, duty, and experience between Pasquarello and his younger comparators, Defendants have pointed to facts in the record that show that Plaintiff has no support for his assertions – including his baseless claim that Mr. Nunez is a comparator. (Defs.' Br. 13-15.) In so doing, Defendants have also negated an essential elements of Plaintiff's equal pay claim – that similarly situated employees were compensated at a higher rate.

Plaintiff also cites *Liu v. Win Woo Trading, LLC*, No. 14-CV-02639-KAW, 2016 WL 3231518 (N.D. Cal. June 13, 2016) to support his assertion that summary judgment on his equal pay claim has been waived. But *Win Woo Trading* is an irrelevant case from outside the Second District. *Id.* It involves a motion for summary judgment in which the defendants argued against claims and theories of law that were not made in the complaint. *Id.* at *4. *Win Woo Trading's* subject and circumstances are not remotely comparable to this case. Here, Defendants have addressed the allegations in the Complaint and do not seek to argue against a theory of law not asserted in the Complaint. For these reasons, Defendants should be granted summary judgment on Plaintiff's equal pay claims as they pertain to Mr. Nunez or any other purported comparator.

### B. Plaintiff Has Failed to Identify Material Facts Proving That He Was Subject to a Hostile Work Environment or Treated Differently Than Other Employees

As argued in Defendants' Brief, a plaintiff alleging discrimination under the ADEA must show that: (1) he was a member of a protected class; (2) he was competent to perform the job at-issue, or was performing the job duties satisfactorily; (3) he suffered a materially adverse employment action; and (4) the action occurred under circumstances that cause an inference of discrimination. *McBride v. BIC Consumer Prods. Mfg. Co.*, Inc., 583 F.3d 92, 96 (2d Cir. 2009); *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020). But here, Plaintiff has proffered no evidence aside from his own subjective opinion to show that he was performing his job duties satisfactorily and that he suffered any adverse employment actions under circumstances from which one can infer discrimination. In the place of genuine material facts, Plaintiff relies on conjecture, mischaracterizations, and unsupported claims of ageist bias.

Plaintiff identifies eight unsupported allegations of discrimination to create the appearance of a factual dispute, but they are all either lacking in substance or factual basis. (Pl.'s Br. 14.) Plaintiff identifies no individuals who can support his claims of ageist comments from Mr. Roche. (*Id.*) The same is true for his claims that Mr. Roche belittled him in front of other employees, and allowed other younger employees to make ageist and condescending comments towards him. (*Id.*) And, even if true, these alleged comments cannot support a finding of age discrimination. *Del Franco v. N.Y.C. Off-Track Betting*, 429 F. Supp. 2d 529, 536 (E.D.N.Y. 2006) ("statements made by decisionmakers unrelated to the decisional process itself do not constitute sufficient evidence to support a claim of age discrimination") (internal citation and marks omitted).

Plaintiff's claim that Mr. Roche refused to allow him to staff the Fire Safety Department also falls short. (*Id.*) Plaintiff was allowed to hire two employees (Kanterman and Garcia) during his tenure. (CMF ¶¶ 27, 29.) He disregards these hires and cites Mr. Roche's letter dated June 1,

2021 as evidence of being disadvantaged in hiring a full staff. (CMF ¶ 164.)But that letter directly contradicts his assertion. (CMF ¶ 164.) In the letter, Mr. Roche states:

> Joe is under the belief that he is and has been performing the duties of two people . . . I clarified with Joe, that although we are currently budgeted for three managers and we have two managers, recruiting for a 3rd, this same workload was previously covered by one person, Bob Shaffer, from 2013 until 2015. The portion of the department for which Joe is responsible for, with is primarily documentation and ensuring that our vendors are performing their required testing within the required timeframe, is unchanged since Bob was in that role.

(*Id.*) Plaintiff is not excused from performing his job duties as expected because of his subjective belief about what a fully staffed Fire Safety Department should look like. To date, the Fire Safety Department is only staffed by two individuals. (SUF ¶¶ 30-32.) Defendants were not required to hire additional staff to appease Plaintiff's desire for lessening his job duties. (CMF 173-174.)

Plaintiff's other allegations are similarly unsupported by factual evidence. He alleges that Roche "threatened his job" by informing him of his poor performance. (Pl.'s Br. 14.) But telling an employee they are not meeting standards does not equate to a materially adverse action or qualify as a "threat." (SUF ¶¶ 69-70, 72, 90-92, 102.) The supposed "clique" of younger employees that Mr. Roche maintained was simply a group of individuals that got lunch together. (Seliger Decl. Ex. 1, 115:7-11.) And Defendants' supposed preferential treatment of Bond over Jurain rings hollow because both employees faced adverse action for their poor performance, and Bond, unlike Jurain, was demoted for his underperformance. (SUF ¶¶ 24, 49.)

Finally, Plaintiff alleges that the PIP he was placed on was baseless. (Pl.'s Br. 15.) But the undisputed facts say otherwise. Plaintiff was subject to a Human Resources Department approved PIP because of his poor performance, which was expressly outlined in his PIP. (SUF ¶ 113.) Plaintiff's mere disagreement with his placement on a PIP does not establish discrimination. His allegations of discrimination related to the PIP (and other nondiscriminatory actions) were

6

investigated by Human Resources and found to be unfounded. (SUF ¶¶ 98-99, 104-05, 107.) Plaintiff identifies no facts to suggest that Human Resources' investigation into his allegations were flawed, unfounded or clouded by bias. In fact, he relies on the *same* Human Resources Department to conclude incorrectly that he was performing his duties admirably. (Pl.'s Br. 20-21.) Plaintiff cannot have it both ways. He cannot highlight the purported decisions of the Human Resources Department when he believes they may bolster his credibility, but undermine their decisions when they shed light on his deficiencies. Plaintiff's supervisor believed that his department was falling short of expectations, and he was justifiably held responsible. His desire to escape responsibility for those shortcomings is not a genuine issue of fact.

Despite Plaintiff's attempts to create a nonexistent factual dispute (Pl.'s Br. 16), his claims of discrimination are undermined by the fact that the same actor – Roche – who hired him, was also the individual who issued him discipline. (SUF ¶ 25, Shaffer Decl. ¶ 15.); *see Varno v. Canfield*, 664 F. App'x 63, 65 (2d Cir. 2016) ("[Plaintiff] was hired and fired by the same supervisor, creating an inference against discriminatory intent.") Plaintiff argues that the same actor inference does not apply because he spoke to more than one individual during his interview process. **(**Pl.'s Br. 16.) But there is nothing irregular about more than one individual interviewing a candidate for a management level position. Plaintiff cites to the case of *Brown v. Crowdtwist,* No. 12CV6110 HB, 2014 WL 1468145, at *4 (S.D.N.Y. Apr. 15, 2014), to support his position. But *Crowdtwist* involved a manager who hired an employee, but was not the sole decisionmaker in his termination. *Id.* That is not the case here, where the other interviewers admit that Roche made the decision to hire Plaintiff. (Shaffer Decl. ¶ 15.)

This complete lack of *necessary* evidence demonstrates that there are no genuine issues of material fact. Plaintiff's claims under the NYCHRL and NYSHRL fail for the same reason.

7

Plaintiff cannot point to any other assistant director with documented performance issues who disregarded the instructions of his manager as early as his second month on the job. (SUF ¶¶ 59-66.) He cannot point to any other assistant manager placed on a PIP who not subject to stringent documentation and reporting requirements. And he cannot point to any similarly tenured Crothall employee that was more highly compensated. For these reasons, Plaintiff cannot identify any material facts that show he was treated "less well" because of his age as he must do under the NYCHR and NYSHRL.

### C. Plaintiff Has Failed to Identify Material Facts Proving That He Was Subject to Retaliation

Plaintiff does not contest that Roche gave him warnings about his job performance in October 2020, was dissuaded from issuing him a counseling in December 2020 by Mr. Shaffer, and made it clear to him that his performance would result in discipline in May 2021. (CMF ¶¶ 69, 72, 92, 224-25.) He only states his disagreement with the Human Resources Department-approved discipline he received following these warnings. (*Id.*) Thus his claims fails because the alleged adverse action against him occurred *before* his complaint to Human Resources. *See Middleton v. Metro. Coll. of N.Y.*, 545 F. Supp. 2d 369, 375-76 (S.D.N.Y. 2008).

In opposition, Plaintiff creates his own unsupported legal theory that Defendants' prior actions towards him had to be "tangible" to qualify as adverse actions. But nothing in the law states written performance reviews and verbal warnings about one's performance do not constitute adverse actions. The remainder of Plaintiff's claims – such as being embarrassed in front of other coworkers by references to his earlier deadlines as required by the PIP (Pl.'s Br. 21) – are not supported by any evidence in the record. Plaintiff asks the Court to simply take his word for it. His claims of retaliation fail because the record simply cannot support his accusations.

### D. Plaintiff Was Not Constructively Discharge

There is no evidence to support Plaintiff's claim of a constructive discharge, which only occurs when an employer, rather than discharging its employee directly, "intentionally creates a work atmosphere so intolerable that [the employee] is forced to quit involuntarily." *Terry* v. *Ashcroft*, 336 F.3d 128, 151–52 (2d Cir.2003). Thus, a constructive discharge cannot be proven merely by evidence that an employee disagreed with an employer's criticisms of the quality of his work, or preferred not to continue working for that employer. *Spence* v. *Md. Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir.1993). Nor is the test merely whether the employee's working conditions were difficult or unpleasant. *Id.* Here, Plaintiff continued to work for Defendants for several months after receiving his PIP, which eliminates any claim for constructive discharge. (SUF ¶¶ 98-99, 113.)

Plaintiff alleges that a jury may find he was constructively discharged because of the terms of his PIP. But a PIP does not constitute a constructive discharge without a showing that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Gorman v. Covidien*, LLC, 146 F. Supp. 3d 509, 525–26 (S.D.N.Y. 2015). Plaintiff's PIP created a roadmap for him to succeed in his position, and Roche confirmed in September 2021 that Plaintiff completed the PIP. Plaintiff continued to work for Crothall for four months after being placed on the PIP, attempted to meet its objectives, and was no longer on the PIP as of his resignation. Plaintiff was not constructive discharged.

## CONCLUSION

For these reasons, and those set forth in Defendants' opening brief, Defendants request that the Court grant summary judgment on all of Plaintiff's claims and dismiss this case in its entirety.

Date:  December 12, 2022  **LITTLER MENDELSON, P.C**.

By: */s/ Shawn Matthew Clark*
Shawn Matthew Clark
Zack G. Sharpe, IV
900 Third Avenue
New York, New York  10022.3298
212.583.9600
SMClark@littler.com
ZSharpe@littler.com

*Attorneys for Defendants*